**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION**

| | | |
|---|---|---|
| **PARENTS DEFENDING EDUCATION** | : | Case No. 2:23-CV-01595 |
| | : | Chief Judge Algenon L. Marbley |
| Plaintiff, | : | Magistrate Judge Kimberly A. Jolson |
| v. | : | |
| **OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION,** et al. | : | **MEMORANDUM IN OPPOSITION OF DEFENDANTS OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, MARK T. RAIFF, RANDY WRIGHT, PETER STERN, KEVIN DABERKOW, BRANDON LESTER, KEVIN O'BRIEN, LIBBY WALLICK, AND LAKESHA WYSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| Defendants. | : | |

**I.  BACKGROUND**

This case involves the claims of four pseudonymous parents asserted by the plaintiff, the non-profit organization called Parents Defending Education ("PDE"), against the Olentangy Local School District Board of Education (the "District" or "Board") and its individually-named Board Members, Randy Wright, Kevin Daberkow, Brandon Lester, Kevin O'Brien, Libby Wallick and LaKesha Wyse, as well as former Superintendent Mark T. Raiff and current Superintendent Peter Stern. See Doc. # 1, generally. PDE, through its anonymous parent-members, ask this Court to enjoin the District from enforcing its policies regarding harassment and personal communication devices. Id.

On April 10, 2023, the District adopted a revised version of Policy 5517 to protect all its students from harassment. Pursuant to the Policy:

> It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.
>
> The Board will vigorously enforce its prohibition against discriminatory harassment based on race, color, national origin, sex (including sexual orientation and gender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as Third Parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

Moreover, "harassment" is defined as "any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that: A. places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property; B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or C. has the effect of substantially disrupting the orderly operation of a school."

Furthermore, the District also maintains Policy 5136 (*last revised November 9, 2017*), which governs students' personal communication devices ("PCDs"), including tablets and smartphones. Pursuant to Policy 5136:

> Students may not use a PCD in any way that might reasonably create in the mind of another person an impression of being **threatened, humiliated, harassed, embarrassed or intimidated**. See Policy

Case: 2:23-cv-01595-ALM-KAJ Doc #: 13 Filed: 06/01/23 Page: 3 of 20 PAGEID #: 425

> 5517.01 – Bullying and Other Forms of Aggressive Behavior. In particular, students are prohibited from using PCDs to: (1) transmit material that is threatening, obscene, disruptive, or sexually explicit or that can be construed as harassment or disparagement of others based upon their race, color, national origin, sex (including sexual orientation/transgender identity), disability, age, religion, ancestry, or political beliefs; and (2) engage in "sexting" - i.e., sending, receiving, sharing, viewing, or possessing pictures, text messages, e-mails or other materials of a sexual nature in electronic or any other form. Violation of these prohibitions shall result in disciplinary action. Furthermore, such actions will be reported to local law enforcement and child services as required by law.

(Emphasis added).

The District's Student Code of Conduct echoes these policies and strongly affirms the District's mission "to facilitate maximum learning for <u>each</u> student."

The District concedes that, in February 2023, a parent wrote to the District asking whether their student who believes in two biological genders would be forced to use the pronouns that a transgender child identifies with. The District further concedes that counsel replied to the parent that purposeful references contrary to another student's identity would violate District policies. However, PDE conveniently omits from its Motion the parent's follow-up question and District counsel's follow-up response:

> **Parent**: If my child expresses their religious beliefs that marriage is between a man and a woman OR that homosexuality is a sin, will they be disciplined for their beliefs as harassment, bullying per the policy cited in my previous email?
>
> **Counsel**: In response to your question below, <u>the District would not discipline your son for his religious beliefs</u>. Also, you had previously asked questions about your son's use of pronouns for peers at school. While you did not raise this, if your son would like to discuss accommodations to avoid using pronouns where doing so would be contrary to his religious beliefs, the District is happy to discuss those options with him.

See <u>February-March 2023 Parent Email Thread</u>, attached hereto as Exhibit A (emphasis added).

On May 11, 2023, PDE filed a Complaint and the instant Motion for Preliminary

- 3 -

A Legal Professional Association

Injunction. PDE, purportedly through its pseudonymous members "Parents A-D," theoretically claims that the aforementioned policies prevent the unidentified students from expressing their "deeply held beliefs" that sex is immutable. PDE further contends that, the students remain silent in school environment through *self-censorship* in fear of disciplinary action. Inherent in PDE's allegations of fear of reprisal is the tacit admission that no pseudonymous student-member has actually been disciplined for their speech.

PDE's claims fail procedurally and substantively. PDE does not have standing to assert the claims brought in this action and, even if it did, PDE's claims fail on the merits because it cannot establish a likelihood of success or imminent, irreparable harm. Moreover, substantial harm to third parties and the public would follow if an injunction were to issue. Therefore, PDE's Motion must be denied.

**II.     STANDARD**

Under Federal Rule of Civil Procedure 65, injunctive relief is an **extraordinary remedy**, the purpose of which is to preserve the status quo. In determining whether to grant or deny a preliminary injunction, this Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati, 363 F.3d 427, 432 (6th Cir. 2004) (quoting Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n., 110 F.3d 318, 322 (6th Cir. 1997)). The foregoing factors are not prerequisites, but rather are factors that the Court should balance. United States v. Edward Rose & Sons, 384 F.3d 258, 261 (6th Cir. 2004). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v.

Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002).

### III. LEGAL ANALYSIS

**A. PDE Lacks Standing Because its Members Have not Sustained an Injury in Fact.**

To satisfy the constitutional requirement of standing, plaintiffs in federal court bear the burden of establishing that (1) they have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and internal quotation marks omitted). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004) (citation omitted). The claimed future injury must be "certainly impending to constitute injury in fact," and "allegations of *possible future injury* are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (citation and internal quotation marks omitted) (emphasis added). Moreover, under the First Amendment, mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 418, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013).

Here, PDE alleges that it is a "nationwide, grassroots membership organization whose members include parents, students, and other concerned citizens. PDE's mission is to prevent—through advocacy, disclosure, and, if necessary, litigation—the politicization of K-12 education." Doc. # 1, ¶ 14. PDE alleges that it has four members who are parents of students in the District. Id., ¶ 15. PDE does not disclose the identity of these alleged member-parents and simply informs

the Court that the member-parents will be proceeding anonymously[1] throughout this litigation; their declarations claim fear of reprisal. Setting aside the fact that without identifying information regarding the plaintiffs the District cannot fully evaluate this action, even assuming the anonymous parents are members of PDE and have or had a student enrolled in the School District, none of the member-parents or students have standing to pursue their claims.

Not one of Parents A-D or their students have suffered an injury to a cognizable interest. As noted above, for standing, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Lujan, 504 U.S. at 560.

Here, the Complaint clearly establishes that the students of Parents A-D *self-censor* out of a purported concern of disciplinary action. Doc. # 1, ¶¶ 78, 84, 106, 116, 122, 133-136, 144. However, the Complaint is devoid of any allegation that a student has been subjected to any disciplinary action. See generally, id. In short, there has been no injury to PDE vis-à-vis Parents A-D with respect to their rights or the rights of their children. Instead, they have asserted only speculation. Yet, for a party to have standing, they must *have suffered* an *actual* invasion of a legally protected interest—conjectural and hypothetical invasions do not impart standing. Lujan, 504 U.S. at 560.

Additionally, even if a concrete injury were present, PDE fails to meet the third element of standing, in that the speculative injury will not be remedied through a favorable decision. In their Motion, PDE asks this Court to enjoin the District from enforcing its policies designed to *protect*

---

[1] The District objects to the parents' pseudonymity. It is a general rule that a complaint must state the names of the parties. Fed. R. Civ. P. 10(a). Plaintiffs are permitted to proceed under pseudonyms only under certain circumstances that justify an exception to this rule. Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004). Further, "failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case, because * * *'the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.'" Citizens for a Strong Ohio v. Marsh, 123 F.App'x 630, 637 (6th Cir.2005) (quoting Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989)).

its students from harassment. However, the District is required to comply with, for example, federal laws, including all applicable antidiscrimination provisions—such as Titles VI and VII of the Civil Rights Act of 1964, and Title IX of the Education Amendments of 1972. The United States Supreme Court's decision in Bostock v. Clayton Cty., Georgia., U.S. 140 S. Ct. 1731 (2020), as well as other federal court cases, clearly extend sex discrimination under Title VII of the Civil Rights Act of 1964 to include prohibition of employment discrimination on the basis of sexual orientation and gender identity. Moreover, the Sixth Circuit, has extended the same protections to students under Title IX, stating "[u]nder settled law in this Circuit, gender nonconformity, as defined in Smith v. City of Salem, is an individual's "fail[ure] to act and/or identify with his or her gender...Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination." 378 F.3d 566, 575 (6th Cir. 2004). Dodds v. United States Dept. of Education, 845 F.3d 217, 221 (6th Cir. 2016). Accordingly, in that case, the Court concluded that a school district's policy of prohibiting a transgender female student from using the restroom with which she identified her would be a violation of Title IX as it would constitute discrimination on the basis of her sex.

The District acknowledges that, pursuant to Tennessee v. United States Dept. of Edn., 615 F. Supp. 3d 807, 842 (E.D.Tenn.2022), Ohio is temporarily enjoined from implementing the Interpretation, Dear Educator Letter, Fact Sheet, and the Technical Assistance Document issued by the United States Department of Education extending the Bostock protections to *students* by virtue of Title IX. However, this does not change the fact that a majority of Circuit Courts have accepted that Title IX prohibits discrimination based on gender identity and/or sexual orientation as unlawful sex-based discrimination. This includes the Sixth Circuit's Dodds decision, and more recently, the Fourth Circuit's decision in Grimm v. Gloucester Cnty. School Bd., 972 F.3d 586,

- 7 -

- 8 -

618 (4th Cir. 2020). In Grimm, the Fourth Circuit expressly extended the Supreme Court's interpretation of Title VII in Bostock to Title IX, to conclude that discrimination against a transgender individual is necessarily unlawful discrimination on the basis of sex in violation of Title IX. Id. When the school district sought review by the Supreme Court, the Court denied *certiorari*. Gloucester Cnty. School Bd. v. Grimm, 210 L.Ed.2d 977, 141 S.Ct. 2878 (2021).

Should this Court enjoin the District from enforcing its policies protecting both students and staff from being harassed based on their sexual orientation and/or gender identity, the District would still be required to comply with Title VII and Title IX, which explicitly protect its students and staff from such discrimination and harassment. Accordingly, to the extent PDE argues that the students of Parents A-D's hypothetical expression of their viewpoints on gender qualify as harassment, the District *must* still prevent said harassment even if it is enjoined from enforcing Policy 5517. This protection is likewise memorialized in Policies 1662, 3362, and 4362 that reinforce the District's commitment to ensuring its work environment is free from unlawful harassment. This includes actions such as ensuring District staff and students are not subject to harassment based on their sexual orientation and/or gender identity. The District could act unlawfully and subject itself to liability if it permits harassment of student or staff based on their gender identity outside of the provisions contained in Policy 5517. Therefore, PDE's requested relief cannot redress the alleged injury asserted in this action and therefore it cannot satisfy this element of standing.

    **B.  PDE Cannot Satisfy any of the Elements for an Injunction.**

        *1.  PDE is unlikely to prevail on the merits of their claims.*

Although the Court is required to balance each of the four factors, a preliminary injunction should not issue unless there is a likelihood of success on the merits. Michigan State v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997). To show a likelihood of success, a plaintiff must demonstrate

more than a mere possibility of success, but it need not "'prove [its] case in full.'" Northeast Ohio Coalition v. Husted, 696 F.3d 580, 591 (6th Cir. 2012) (quoting Certified Restoration Dry Cleaning Network v. Tenke Corp., 511 F.3d 535, 543 (6th Cir. 2007)).

> a. Plaintiff's First Amendment Claims are not Supported Because the Policies are Neither Compelled Speech nor Content-Based.

Courts recognize that neither students nor teachers shed their constitutional rights to freedom of expression at the schoolhouse gate. Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). PDE relies heavily on Meriwether v. Hartop, 992 F.3d 492 (6th Cir.2021), in its contention that the District's directive on pronoun usage is compelled speech through compelled silence. In that case, a university professor objected to using a student's preferred pronouns on religious grounds. The professor proposed to address students by last name or to note his disagreement with the use of preferred pronouns in his syllabus, but the college told him that would violate policy. Eventually, the professor was disciplined for violating the university's nondiscrimination policy. See id. The Sixth Circuit held the university had forbidden the professor from describing his views on gender identity and therefore "silenced a viewpoint that could have catalyzed a robust and insightful in-class discussion." See id. at 506.

In relying on Meriweather, PDE ignores the facts that: (1) the issues in that case involved academic freedom for university professors, the regulation of employee speech, and rejection of an employee's religious beliefs, none of which are present in this case; and (2) courts have continually emphasized the distinction between public K-12 schools and universities in addressing speech and other constitutional issues. See, e.g., Grutter v. Bollinger, 539 U.S. 306, 329, 123 S. Ct. 2325, 156 L. Ed. 2d 304 (2003) (recognizing that "universities occupy a special niche in our constitutional tradition").

- 9 -

"Students cannot be punished merely for expressing their personal views on the school premises . . . unless school authorities have reason to believe that such expression will substantially interfere with the work of the school or impinge upon the rights of other students." Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (quotation omitted). Yet, it has long been recognized that "the First Amendment rights of students in the public schools 'are not automatically coextensive with the rights of adults in other settings.'" Id. (quoting Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986). Those rights must therefore be "applied in light of the special characteristics of the school environment." Id. A school district, unlike other governmental bodies, can prohibit certain student speech where that speech is inconsistent with the district's "basic educational mission." Id. Accordingly, "[t]he determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board, rather than with the federal courts." Id.

Here, PDE cannot rely on Meriwether, as Supreme Court precedent makes patently clear the differing environments demand different considerations. In fact, even the Court itself in Meriwether made this important distinction, noting that it would not apply the same analysis in that case to one involving a teacher in a K-12 school environment. Meriwether, at n.1 ("[In Evans-Marshall], [w]e distinguished college and university professors and made clear that our holding was limited to schoolteachers"). PDE also, interestingly, relies on a case from the Middle District of Alabama, Doe v. Marshall, 367 F. Supp. 3d 1310 (M.D.Ala.2019). In that case, the plaintiffs were convicted sex offenders who argued that printing "CRIMINAL SEX OFFENDER" on their state-issued identification cards was unconstitutional. The court agreed, holding that the branded-ID requirement compels speech *and* was not the least restrictive means of advancing a compelling state interest. Id. at 1324. PDE plucked out the term "virtual necessity" to (presumably) equate the

use of pronouns with the use of government-issued IDs by sex offenders. However, PDE's citation to the very *unanalogous* case is misleading, at best. The State of Alabama's decision to brand sex offender IDs most certainly did not take place in the public K-12 environment and most certainly did not involve pronouns.

PDE also claims the policy amounts to viewpoint and content-based restrictions on speech. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015). Where a restriction is content based, it must be narrowly tailored to serve a compelling interest. See id. Additionally, "[g]overnment discrimination among viewpoints—or the regulation of speech based on the specific motivating ideology or the opinion or perspective of the speaker—is a more blatant and egregious form of content discrimination." Id. at 168–69 (quotations omitted).

Here, the policies are neutral on their face—they prohibit *any* discriminatory harassment based on sex (including sexual orientation and gender identity). This applies to all students, regardless of their view on the immutability of sex. Furthermore, the District's challenged policy patently applies to prevent harassment, not compel a preferred viewpoint as PDE suggests. PDE's argument is circular in that it contends the policy violates the First Amendment by preferring the viewpoint that gender is fluid. Yet, should PDE's position be adopted and students be permitted to harass (as defined by the Policy) other students or employees by using pronouns in a such a manner to substantially interfere with another student's education or an employee's work performance, for example, the District would not be acting neutral. Rather, the District would instead be advancing *PDE's* view that sex is immutable. Yet, the policy doesn't prevent or compel *speech*—it prevents *harassment*. PDE attempts to paint a picture of a strict liability tort in that a student may be subject

to irreparable discipline for a single utterance of an incorrect pronoun when in reality, the policy clearly advances the District's mission to promote maximum learning for *all students* by protecting *all students*, including transgender and cisgender students, from harassment that substantially disrupts their learning environment. To that end, all students are expected to interact with one another in a manner that is non-discriminatory and non-harassing, whether based on gender identity, race, national origin, sex, disability, or any other protected class. Therefore, even if considered content-based, the policy is clearly narrowly tailored to protect students and staff from harassing behavior. While PDE's members and students are free to believe sex is immutable, the First Amendment does not grant them the freedom to harass other students or staff for their view that it is not.

      b. <u>PDE is Unlikely to Prevail on its First Amendment Claims Because the Policies are not Overbroad.</u>

A policy or law is facially overbroad under the First Amendment when no application of the policy would be constitutional or where a substantial number of the policy's potential applications would be unconstitutional in relation to the policy's legitimate sweep. <u>Ams. For Prosperity Found. V. Bonta</u>, 141 S. Ct. 2373, 2387, 210 L. Ed. 2d 716 (2021). PDE claims that the policies are overbroad because they don't target pervasive conduct, but instead punish a single instance of unwanted speech. See <u>Doc. # 7</u>, p. 16. In doing so, PDE either misreads or misrepresents the subject policies through significant excerption. PDE also ignores the mandate from within their cited case law, <u>Saxe v. State College Area School Dist.</u>, 240 F.3d 200 (3d Cir.2001), that before declaring a policy unconstitutional, the Court must determine whether it is susceptible to a reasonable limiting construction. <u>Id.</u> at 215. Here, when the policies and student Code of Conduct are read as a whole, it is clear that the District is not policing every hurt feeling of its students and staff. Rather, it is aimed at prohibiting students from using the First Amendment

as shield to harass fellow students and staff for their own political and/or religious beliefs in a manner that substantially disrupts the educational or work environment. PDE has not shown otherwise.

PDE's reliance on Mahanoy Area School Dist. v. B.L., __U.S.__, 141 S.Ct. 2038, 2046, 210 L.Ed.2d 403 (2021), in support of an overbreadth argument for off-campus speech is likewise flawed as Mahanoy is not analogous. In that case, a cheerleader (who was upset she did not make the varsity squad) posted on her Snapchat feed to 250 of her friends an image with her middle finger raised and the caption: "fuck school fuck softball fuck cheer fuck everything." Her post was shared with other cheerleaders and caused a bit of upset on the squad, members of which took it to the cheerleading coach. The coach and principal decided that because the posts used profanity in connection with a school extracurricular activity, they violated team and school rules. As a result, the coaches suspended her from the junior varsity squad for the upcoming year. The school's athletic director, principal, superintendent, and school board all affirmed her suspension from the team. Id. at 2043. On appeal, the Supreme Court explicitly held that public schools *may have a special interest in regulating some off-campus student speech*. Id. at syllabus. However, the speech at issue in Mahanoy did not permit off-campus regulation because "[s]he did not identify the school in her posts or target any member of the school community with vulgar or abusive language." Id. *Explicit* in the Court's holding was the further recognition that, "[c]ircumstances that may implicate a school's regulatory interests include serious or severe bullying or harassment targeting particular individuals; threats aimed at teachers or other students; the failure to follow rules concerning lessons, the writing of papers, the use of computers, or participation in other online school activities; and breaches of school security devices." Id.

Again, PDE's opportunistic excerption of the policies at issue here does not create the overbreadth it asks this Court to find. The pseudonymous parents and their children have not alleged that there has been school discipline for expressing their view that sex is immutable. Once more, the reasonable limiting constructions of the policies and Code of Conduct together establish that the District's aim is for its students to be educated in an environment where they are not subject to harassment for their beliefs.

    c. <u>PDE Cannot Prevail on its Fourteenth Amendment Claim Because the Parents Have not Been Deprived of any Fundamental Right.</u>

The Fourteenth Amendment "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." <u>Washington v. Glucksberg</u>, 521 U.S. 702, 703 (1997). "Substantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." <u>Reno v. Flores</u>, 507 U.S. 292, 302 (1993) (citations, alterations, and internal quotation omitted). Courts recognize that parents have the "right to direct the education and upbringing of one's children[,]" but this is a "limited" right, "neither absolute nor unqualified." <u>Stevenson v. Blytheville Sch. Dist. #5</u>, 800 F.3d 955, 967 (8th Cir. 2015).

When it comes to student discipline, there are "circumstances in which school authorities, in order to maintain order and a proper educational atmosphere . . . may impose standards of conduct on students that differ from those approved by some parents." <u>Gruenke v. Seip</u>, 225 F.3d 290, 304 (3d Cir. 2000). Unless the school's disciplinary policy directly and substantially interferes with a parent's choice regarding the type of *education* their child receives, the policy will be upheld so long as it passes rational-basis review. <u>Littlefield v. Forney Indep. School Dist.</u>, 268 F.3d 275, 291 (5th Cir.2001); <u>Ingraham v. Wright</u>, 430 U.S. 651, 662, 97 S. Ct. 1401, 51 L. Ed. 2d 711

(1977) (a school may impose disciplinary measures "as is reasonably necessary for the proper education of the child and for the maintenance of group discipline") (internal quotations omitted).

PDE's allegations in this regard are somewhat conflated in its First Amendment claims of overbreadth. However, it appears PDE contends that the policies preventing students from harassing one another off-campus violated the parents' fundamental rights to make decisions concerning the care, custody, and control of their children. See Doc. # 7, p. 24. PDE relies on the inapposite Supreme Court's decisions in Troxel v. Granville, 530 U.S. 57 (2000) (plurality); Meyer v. Nebraska, 262 U.S. 390 (1923); and Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary, 268 U.S. 510 (1925). Troxel involved grandparents seeking visitation with their grandchildren. In Meyer, the Supreme Court reversed the conviction of a teacher who taught German to a student who hadn't passed eighth grade in violation of a state statute, holding that the state's ban interfered with parents' rights to raise their children. Pierce "simply 'affirmed the right of private schools to exist" and lends "no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs . . . ." Runyon v. McCrary, 427 U.S. 160, 177 (1976). Accordingly, it is apparent that none of these cases support PDE's position that the policies prohibiting off-campus harassment of students interferes with the parents' rights to raise their children. PDE's conclusory allegations to the contrary do not even meet Rule 8 muster, let alone would they establish a substantial likelihood of success on the merits.

2. *PDE Cannot Show an Irreparable Injury.*

"The failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors." Essroc Cement Corp. v. CPRIN, Inc., 593 F. Supp. 2d 962, 970 (W.D. Mich. 2008) (citation omitted). This "factor is **indispensable**:

If the plaintiff isn't facing **imminent** and **irreparable** injury, there's no need to grant relief now as opposed to at the end of the lawsuit." D.T. v. Sumner Cty. Sch., 942 F.3d 324, 327 (6th Cir.2019) (emphases added).

In its Motion, PDE simply concludes that the harm is irreparable because it is likely to prevail on its constitutional claims. However, as demonstrated above, PDE is *unlikely* to succeed on the merits of its constitutional claims. However, even if the Court finds PDE is likely to succeed on one or more of its claims, there is no threat of irreparable harm and PDE must satisfy this element to justify a grant of a preliminary injunction. PDE must show irreparable harm is likely in the absence of an injunction and "of such imminence that there is a clear and present need for equitable relief." Lucero v. Detroit Pub. Sch., 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001)). A risk of future irreparable harm is not enough; "there must be a clear showing of immediate irreparable injury." Id. (quotation omitted). PDE has not identified any *imminent* risk of *irreparable* harm that its member-parents or their children face absent injunctive relief. There is no allegation in the Motion or the underlying Complaint that any student has been disciplined for violating the policies.

As the Northern District of Iowa held in a nearly identical case filed by the same Plaintiff (unsuccessfully) on behalf of different, anonymous parents in another state: "[f]urther, there has been no recitation that if discipline occurs, it will be irreparable harm requiring an injunction. Indeed, to the extent that defendants disciplined children for violation of the Policy, that discipline would be subject to review and could be reversed, and thus, not irreparable. In short, the parents only assert that they fear their rights will be harmed if some uncertain future events occur. They have not shown any of these harms to be certain or imminent." Parents Defending Edn. v. Linn-Mar Community School Dist., N.D.Iowa No. 22-CV-78 CJW-MAR, 2022 U.S. Dist. LEXIS 169459, at *17-18 (Sep. 20, 2022). Here, PDE's member-parents are simply worried about what

could theoretically happen in the future. Because PDE cannot establish any threat of irreparable harm, it cannot meet the test for a preliminary injunction and the Motion fails.

> 3. *The Balance of Harms and Public Interest Elements Weigh Against Granting an Injunction.*

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009).

The first portion of this requirement is to determine "whether issuance of the injunction would cause substantial harm to **others**." Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir.2005) (emphasis added). Here, it is evident that issuance of the injunction would cause substantial harm to others. PDE seeks to *completely* enjoin enforcement of the District's policies protecting students from "discriminatory harassment based on race, color, national origin, sex (including sexual orientation and gender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws" as well as the Code of Conduct's prohibition on discriminatory language and harassment. PDE likewise seeks to completely invalidate the policy regarding personal communication devices. Should the Court grant PDE the relief it seeks, the Court would open students and staff up to harassment and discrimination in violation of federal laws. Not only would it harm the victims of such court-authorized discrimination, but it would likewise open the District up to civil liability. This harm is likewise contrary to the public interest.

PDE again does not make an attempt to substantively argue it meets either of the final elements. Rather, it relies on its own assumption that it has established a likelihood of success on the merits of its flawed constitutional claims. Because PDE cannot establish the two final elements,

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

it cannot meet the test for a preliminary injunction and the Motion fails.

### C. PDE Cannot Escape an Injunction Bond.

The Federal Rules of Civil Procedures declare that:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).

Courts have discretion to waive an injunction bond when the defendant would suffer no loss or damage as a result of its issuance. See, e.g., Fehribach v. City of Troy, 341 F.Supp.2d 727, 734 (E.D.Mich.2004).

Here, as noted above in the analysis of the balance of harms, issuance of the injunctive relief sought opens the District up to substantial liability and potential loss of funding. For example, Title IX requires that schools issue policies against sex discrimination. Yet, PDE's Motion and Complaint explicitly seek complete invalidation of the entire policy preventing harassment, including harassment and discrimination based on sex.

Again, PDE's argument is premised entirely on its inaccurate assumptions that it will prevail on its constitutional claims and that the District would incur no harm from issuing the injunction. As analyzed at length above, PDE's constitutional claims fail for a litany of reasons. Moreover, the balance of harms is not restricted to the District's harms (which are also present), but that to third parties. Finally, as noted, PDE is incorrect that no harm would come to the District. Accordingly, should a preliminary injunction issue and bar the District from protecting its staff and students from harassment and discrimination on the bases of all federally-protected classes, PDE should be required to post an injunction bond to compensate the District for damages sustained during any period of wrongful enjoinment.

IV.   CONCLUSION

PDE's request for a preliminary injunction fails procedurally and substantively. PDE lacks standing to assert the claims brought in this action. Even with standing, PDE's request for injunctive relief fails on the merits because it cannot establish a likelihood of success or imminent, irreparable harm. Moreover, substantial harm to third parties and the public would follow if an injunction were to issue. Therefore, Defendants respectfully request this Court deny PDE's Motion.

Respectfully submitted,

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)
Myrl H. Shoemaker, III (0099149)
FREUND, FREEZE & ARNOLD
Capitol Square Office Building
65 East State Street, Suite 800
Columbus, OH  43215-4247
Phone: (614) 827-7300
Fax: (614) 827-7303
bfreeze@ffalaw.com
mshoemaker@ffalaw.com
*Counsel for Defendants Olentangy Local School District Board of Education, Mark T. Raiff, Randy Wright, Peter Stern, Kevin Daberkow, Brandon Lester, Kevin O'Brien, Libby Wallick and LaKesha Wyse*

and

Jessica K. Philemond (0076761)
Sandra R. McIntosh (0077278)
Mitchell L. Stith (0096759)
SCOTT SCRIVEN LLP
250 E. Broad St., Suite 900
Columbus, OH 43215
jessica@scottscrivenlaw.com
sandra@scottscrivenlaw.com
mitch@scottscrivenlaw.com
*Co-Counsel for Defendant Olentangy Local School District Board of Education*

- 20 -

**CERTIFICATE OF SERVICE**

 A true and accurate copy of the foregoing was served this 1st day of June 2023, via the Court's electronic filing system, upon:

| | |
|---|---|
| Emmett E. Robinson (OH Bar No. 88537) | J. Michael Connolly |
| Trial Attorney | Taylor A.R. Meehan |
| ROBINSON LAW FIRM LLC | James F. Hasson |
| 6600 Lorain Ave. #731 | Thomas S. Vaseliou |
| Cleveland, OH 44102 | CONSOVOY McCARTHY PLLC |
| Telephone: (216) 505-6900 | 1600 Wilson Blvd., Ste. 700 |
| Facsimile: (216) 649-0508 | Arlington, VA 22209 |
| erobinson@robinsonlegal.org | mike@consovoymccarthy.com |
| Counsel for Plaintiff | taylor@consovoymccarthy.com |
| | james@consovoymccarthy.com |
| | tvaseliou@consovoymccarthy.com |

 /s/ Bartholomew T. Freeze
 Bartholomew T. Freeze (0086980)