**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

PARENTS DEFENDING EDUCATION

*Plaintiff,*

v.

OLENTANGY LOCAL SCHOOL
DISTRICT BOARD OF EDUCATION, *et al.*,

*Defendants.*

Case No. 2:23-cv-01595

**REPLY BRIEF IN SUPPORT OF PARENTS DEFENDING
EDUCATION'S MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................................ii

INTRODUCTION ..............................................................................................................................1

ARGUMENT.......................................................................................................................................1

I.    PDE is likely to prevail on the merits............................................................................1

      A.  PDE likely has standing............................................................................................1

      B.  The Policies likely violate the First and Fourteenth Amendments. .............................7

      C.  The Policies likely violate parents' Fourteenth Amendment rights. ............................12

II.  PDE satisfies the remaining preliminary-injunction criteria. ..........................................13

III.  The Court should not require an injunction bond. ........................................................14

CONCLUSION ..................................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*281 Care Comm. v. Arneson,*
    638 F.3d 621 (8th Cir. 2011) ..................................................................................... 5

*ACLU of Michigan v. Livingston Cnty.,*
    796 F.3d 636 (6th Cir. 2015) ................................................................................... 13

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.,*
    57 F.4th 791 (11th Cir. 2022) .................................................................................... 6

*Alexis Bailly Vineyard, Inc. v. Harrington,*
    931 F.3d 774 (8th Cir. 2019) ..................................................................................... 3

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ................................................................................................... 6

*Ashcroft v. ACLU,*
    542 U.S. 656 (2004) ................................................................................................... 7

*Barr v. Lafon,*
    538 F.3d 554 (6th Cir. 2008) ..................................................................................... 8

*Bostock v. Clayton Cnty.,*
    140 S. Ct. 1731 (2020) ............................................................................................... 7

*Carpenters Indus. Council v. Zinke,*
    854 F.3d 1 (D.C. Cir. 2017) ...................................................................................... 6

*D.H. by A.H. v. Williamson Cnty. Bd. of Educ.,*
    2022 WL 16639994 (M.D. Tenn. Nov. 2, 2022) ..................................................... 7

*Dambrot v. Cent. Michigan Univ.,*
    55 F.3d 1177 (6th Cir. 1995) ............................................................................... 1, 11

*Davis v. Monroe Cnty. Bd. of Educ.,*
    526 U.S. 629 (1992) ................................................................................................... 7

*Defoe ex rel. Defoe v. Spiva,*
    625 F.3d 324 (6th Cir. 2010) ..................................................................................... 8

*Deja Vu of Nashville, Inc. v. Metro. Gov't,*
    274 F.3d 377 (6th Cir. 2001) ..................................................................................... 5

*Dodds v. U.S. Dep't of Educ.,*
    845 F.3d 217 (6th Cir. 2016) ..................................................................................... 7

*Doe v. Heck,*
    327 F.3d 492 (7th Cir. 2003) ................................................................................... 12

*Doe v. Pittsylvania Cnty.,*
    842 F. Supp. 2d 927 (W.D. Va. 2012) ................................................................... 14

*Dr. John's, Inc. v. City of Sioux City,*
    305 F. Supp. 2d 1022 (N.D. Iowa 2004) ................................................................ 15

*Fischer v. Thomas*,
    52 F.4th 303 (6th Cir. 2022) .................................................................................. 2, 4, 5

*Fitzgerald v. Alcorn*,
    2018 WL 4571878 (W.D. Va. Sept. 24, 2018) ..............................................................14

*Green v. Miss U.S. of Am., LLC*,
    52 F.4th 773 (9th Cir. 2022) .........................................................................................10

*Harrell v. Fla. Bar*,
    608 F.3d 1241 (11th Cir. 2010) ......................................................................................3

*Hazelwood Sch. Dist. v. Kuhlmeir*,
    484 U.S. 260 (1988) .......................................................................................................8

*Hollis v. Lynch*,
    827 F.3d 436 (5th Cir. 2016) ..........................................................................................6

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) .......................................................................................................2

*Iancu v. Brunetti*,
    139 S. Ct. 2294 (2019) ...................................................................................................9

*Int'l Outdoor, Inc. v. City of Troy*,
    974 F.3d 690 (6th Cir. 2020) ........................................................................................10

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*,
    3 F.4th 887 (6th Cir. 2021) ............................................................................................9

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*,
    927 F.3d 396 (6th Cir. 2019) ........................................................................................13

*L.D. Mgmt. Co. v. Gray*,
    988 F.3d 836 (6th Cir. 2021) ..........................................................................................9

*Lee v. Weisman*,
    505 U.S. 577 (1992) .......................................................................................................5

*Legend Night Club v. Miller*,
    637 F.3d 291 (4th Cir. 2011) ........................................................................................11

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*,
    141 S. Ct. 2038 (2021) .......................................................................................... passim

*McGlone v. Bell*,
    681 F.3d 718 (6th Cir. 2012) .................................................................................. 1, 3, 5

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ................................................................................ 1, 2, 8, 9

*Moore v. City of E. Cleveland*,
    431 U.S. 494 (1977) .....................................................................................................12

*NAACP v. Patterson*,
    357 U.S. 449 (1958) .......................................................................................................3

*Online Merchants Guild v. Cameron,*
    995 F.3d 540 (6th Cir. 2021) ................................................................................4

*Parsons v. U.S. DOJ,*
    801 F.3d 701 (6th Cir. 2015) ................................................................................3

*Pelcha v. MW Bancorp, Inc.,*
    988 F.3d 318 (6th Cir. 2021) ................................................................................7

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ............................................................................................10

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ..............................................................................................9

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,*
    487 U.S. 781 (1988) ..............................................................................................4

*Sandusky Cnty. Democratic Party v. Blackwell,*
    387 F.3d 565 (6th Cir. 2004) ................................................................................2

*Saxe v. State Coll. Area Sch. Dist.,*
    240 F.3d 200 (3d Cir. 2001) .................................................................................9

*Select Distributors, LLC v. Breeze Smoke, LLC,*
    2021 WL 2820985 (E.D. Mich. July 7, 2021) .....................................................15

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.,*
    56 F.4th 400 (6th Cir. 2022) ...........................................................................4, 14

*Speech First v. Schlissel,*
    939 F.3d 756 (6th Cir. 2019) .............................................................................3, 5

*Speech First, Inc. v. Cartwright,*
    32 F.4th 1110 (11th Cir. 2022) .........................................................................3, 5

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) .............................................................................2, 3

*Speech First, Inc. v. Khator,*
    603 F. Supp. 3d 480 (S.D. Tex. 2022) ................................................................14

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...........................................................................................2, 3

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
    393 U.S. 503 (1969) ..............................................................................................8

*Troxel v. Granville,*
    530 U.S. 57 (2000) .........................................................................................12, 13

*United Food & Com. Workers Loc. 99 v. Brewer,*
    817 F. Supp. 2d 1118 (D. Ariz. 2011) .................................................................15

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000) ............................................................................................10

*United States v. Stevens*,
   559 U.S. 460 (2010) ......................................................................................... 10, 11

*Vitolo v. Guzman*,
   999 F.3d 353 (6th Cir. 2021).......................................................................... 6, 13, 14

*W. Virginia Bd. of Ed. v. Barnette*,
   319 U.S. 624 (1943) ...............................................................................................8

*Wallace v. FedEx Corp.*,
   764 F.3d 571 (6th Cir. 2014).................................................................................7

*Wollschlaeger v. Governor*,
   848 F.3d 1293 (11th Cir. 2017)..............................................................................2

**Statutes**

20 U.S.C. §1681 ...........................................................................................................9

42 U.S.C. §2000d ........................................................................................................8

42 U.S.C. §2000e-2 .....................................................................................................8

**Constitutional Provisions**

U.S. Const. art. VI......................................................................................................6

v

## INTRODUCTION

The Olentangy School District concedes that its school policies prohibit students from using pronouns consistent with a classmate's biological sex instead of their gender identity. Opp. 3. The District also concedes that it will, in fact, punish these students if they express their deeply held beliefs. Opp. 8. And the District doesn't dispute that its speech restrictions apply at all hours of the day, including when students are at home communicating through social media or texting. Opp. 12-14.

Despite these concessions, the District claims that PDE lacks Article III standing because the District hasn't punished its members' children yet. Opp. 4, 6. But standing to bring these constitutional claims does not require speakers to wait around to be punished, lest speakers whose speech is chilled never have standing to sue. *See McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012) (standing "even if they have never been prosecuted or threatened with prosecution"). The District further argues that PDE's injuries are not redressable because the Policies are *required* by Title IX. But Title IX doesn't require the District's Policies and, even if it did, a federal statute cannot trump the Constitution.

The District's defenses of their policies on the merits are even weaker. The Policies are plainly unconstitutional: they compel speech, discriminate based on content and viewpoint, and are unconstitutionally overbroad. *See Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021); *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1184-85 (6th Cir. 1995); *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2047 (2021). The Court should grant PDE's motion.

## ARGUMENT

I.      **PDE is likely to prevail on the merits.**

        A.      **PDE likely has standing.**

An association has standing when (1) "its members would otherwise have standing to sue in their own right," (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) "neither the claims asserted nor the relief requested requires the participation of individual

members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The District challenges only the first requirement. Opp. 5-8.[1] Because standing "'must be supported … with the manner and degree of evidence required at the successive stages of the litigation,'" a plaintiff must show "[a]t the preliminary injunction stage … only that each element of standing is likely." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329-30 (5th Cir. 2020).

### 1.    PDE's members have suffered an injury in fact.

To show standing, PDE must show that (1) the students[2] at issue "intend to engage in expression that the Free Speech Clause arguably protects," (2) their expression is "arguably proscribed" by the Policies, and (3) they face a "credible threat of enforcement." *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). This standard is "'quite forgiving.'" *See Wollschlaeger v. Governor*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc). Indeed, it is "not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech." *Fenves*, 979 F.3d at 331.

PDE satisfies all three requirements. The speech at issue is more than "arguably affected" by a constitutional interest, *Susan B. Anthony*, 573 U.S. at 161, because it reflects core moral, political, and philosophical beliefs, *see* PI-Br. 8-9; *Meriwether*, 992 F.3d at 508 ("Pronouns can and do convey a powerful message implicating a sensitive topic of public concern."). These students' desired speech is more than "arguably proscribed" by the Policies. *Susan B. Anthony*, 573 U.S. at 163; *see* Opp. 3 (conceding that "purposeful references contrary to another student's identity would violate District

---

[1] PDE meets the other *Hunt* requirements: the claims here are in the heartland of PDE's mission, *e.g.*, Neily Decl. ¶¶3-4, and the suit does not require participation of individual members because PDE seeks only declaratory and injunctive relief, *see, e.g.*, *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004).

[2] The children of Parents A, B, and D are also PDE members in their own right, just like their parents. *See* Parent A Decl. ¶5; Parent B Decl. ¶5; Parent D Decl. ¶5; Neily Decl. ¶4.

policies"). And there is a "substantial" threat of the District enforcing the Policies, *Susan B. Anthony*, 573 U.S. at 164, because the Policies "explicitly prohibi[t]" the speech the students want to express, *Parsons v. U.S. DOJ*, 801 F.3d 701, 711 (6th Cir. 2015); *see also Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) ("[W]hen a course of action is within the plain text of a statute, a 'credible threat of prosecution' exists."); *Fenves*, 979 F.3d at 335 (""[W]hen dealing with pre-enforcement challenges to … non-moribun[d] [policies] that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence.""). [3]

The District argues that PDE lacks standing because its student members and its parent members' children have not been punished yet. *See* Opp. 6. But no such evidence is needed. "Plaintiffs may have standing even if they have never been prosecuted or threatened with prosecution." *McGlone*, 681 F.3d at 729; *cf. Speech First v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019) ("The lack of discipline against students could just as well indicate that speech has already been chilled."). What matters is whether there is a "credible threat of enforcement." *Susan B. Anthony*, 573 U.S. at 161.

On that score, the evidence is overwhelming. The District has *confirmed* that the Policies prohibit the students' speech. Opp. 3; Ex. S; *Parsons*, 801 F.3d at 711. The Policies were "recently enacted" or "revised," and there is no "compelling contrary evidence" that they will not be enforced. *Fenves*, 979 F.3d at 335 (cleaned up); *Harrell v. Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010). The District is "vigorously litigat[ing]" their constitutionality. *Online Merchants Guild v. Cameron*, 995 F.3d

---

[3] The District criticizes PDE for not identifying the names of its members. Opp. 5-6 & n.1. But PDE has not brought "anonymous" litigation. Opp. 5 n.1. The plaintiff is PDE. Parents A–D are PDE's members, "not … parties to the litigation." *NAACP v. Patterson*, 357 U.S. 449, 459 (1958); *see* Neily Decl. ¶¶6-7. PDE provided its members' declarations through pseudonyms given the sensitive subject matter, the obvious privacy concerns, and the minor children involved. *See, e.g.*, Parent A Decl. ¶24 ("I also want to protect the identity and privacy of my child concerning these deeply sensitive issues."). Courts regularly accept similar declarations at the preliminary-injunction stage in these types of facial challenges. *See, e.g.*, *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1114 (11th Cir. 2022).

540, 551 (6th Cir. 2021). The Policies themselves emphasize that violations "are strictly prohibited and will not be tolerated." Ex. D at 16; *e.g.*, Ex. A at 1 (promising to "vigorously enforce" Policies); Opp. 2 (same). And the District has repeatedly refused to provide assurances that it will not punish students who refer to classmates according to their biological sex or express their sincerely held beliefs about sex and gender. Ex. S; Opp. 3, 8; *see Fischer*, 52 F.4th at 309 ("[S]uch refusals, in combination with the other factors, weigh in favor of finding a credible threat of prosecution.").

Indeed, the District has "warned" parents and students that their children's desired speech would violate the Policies and be met with consequences. *See Online Merchants*, 995 F.3d at 550 ("warning letters" sent to regulated parties "regarding their specific conduct" favored standing); Ex. S (warning a parent that "[a] student purposefully referring to another student by using gendered language they know is contrary to the other student's identity would be an example of discrimination under Board Policy"). The District accuses PDE of "conveniently omit[ting]" part of the exchange in Exhibit S "from its motion." Opp. 3. That is incorrect; the entire document was provided to the Court. *See* Ex. S at 2 (depicting email exchange). Nor does the full exchange help the District in any event. The students do not want "accommodations to avoid using pronouns." *Id.* They want to express their deeply held views as guaranteed by the First Amendment. An "accommodation" that purports to "allow" a student to speak in a manner the District still finds acceptable—instead of allowing the student to simply express his or her beliefs—is simply compelled speech by another name. It still "alters the content of the [student's] speech." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988). Moreover, the District never specifies what its purported "accommodations" would look like or why it thinks they would be appropriate. Regardless, this case involves more than just speech expressing religious views. *E.g.*, Parent D Decl. ¶21 (views are "based on science").

In addition, violations of the District's speech code are easy to commit and easy to report. *See Fischer*, 52 F.4th at 308 (finding significant that the challenged scheme "contains a feature making

enforcement 'easier or more likely'—namely, a provision authorizing any member of the public to file complaints"). Anyone can submit an anonymous report to the District's "Stay Safe Speak Up Helpline" through an online submission or by phone. Ex. J; *see also, e.g.*, Ex. H (same). Similar bias-reporting systems have been found independently to objectively chill speech in the university context. *See, e.g.*, *Schlissel*, 939 F.3d at 764. And the chilling effect is even greater in the K-12 context because adolescents are less mature and more susceptible to pressure from authority figures. *See Lee v. Weisman*, 505 U.S. 577, 592 (1992) ("[T]here are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."); *Cartwright*, 32 F.4th at 1123 ("[T]he students targeted here are ... teenagers … who, it stands to reason, are more likely to be cowed by subtle coercion.").

Finally, the District recognizes that PDE "has clearly establishe[d] that the students of Parents A-D *self-censor*," but it contends that self-censorship is not a "cognizable" injury. Opp. 6. That too is not the law. "'It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.'" *McGlone*, 681 F.3d at 729; *see also, e.g.*, *Deja Vu of Nashville, Inc. v. Metro. Gov't*, 274 F.3d 377, 399 (6th Cir. 2001) ("A mere threat to First Amendment interests is a legally cognizable injury."); *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) ("Self-censorship can itself constitute injury in fact."). Because PDE has shown an "objective chill," it has also shown a "'present injury in fact.'" *McGlone*, 681 F.3d at 729.

### 2.    PDE has shown causation and redressability.

Because the Policies injure PDE's members, causation and redressability are readily satisfied. *See Vitolo v. Guzman*, 999 F.3d 353, 359 (6th Cir. 2021) (injuries caused by law or policy are "redressable by a decision ordering the government" to cease unlawful practices); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) ("Causation and redressability typically overlap as two sides of a causation coin. After all, if a government action causes an injury, enjoining the action usually will

redress that injury." (cleaned up)). The District contends that PDE's injuries are not redressable because "the District is required to comply with … federal laws, including all applicable antidiscrimination provisions," such as Title IX of the Civil Rights Act, and thus "the District must still prevent said harassment even if it is enjoined from enforcing" the challenged Policies. Opp. 7-8 (emphasis omitted). That argument fails.[4]

Most obvious, even if the District were correctly interpreting Title IX (which it isn't), the Constitution is "the supreme Law of the Land." U.S. Const. art. VI. If the District is enjoined from doing something because it violates the Constitution, the District cannot rely on a federal statute to continue doing the same unconstitutional actions. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015); *cf. Hollis v. Lunch*, 827 F.3d 436, 441-42 (5th Cir. 2016) (rejecting the argument that a challenge to a federal statute was not redressable based on a related state statute because if the "federal law [were] unconstitutional[,] … it is likely that [the] state la[w] would also be unconstitutional").

On the merits, Title IX does not require the District's Policies. Title IX prohibits discrimination on the basis of "sex," not "gender identity." 20 U.S.C. §1681(a); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 817 (11th Cir. 2022) (en banc). Nor does *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020), hold otherwise. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) ("[T]he rule in *Bostock* extends no further than Title VII.").[5] And even if it did, Title IX

---

[4] Although the District points to Titles VI and VII of the Civil Rights Act, Opp. 7-8, those statutes have no application here. Title VI speaks only to "race, color, or national origin," not gender identity, and Title VII applies only to *employees*, not students. 42 U.S.C. §2000d; *id.* §2000e-2.

[5] The District points to *Dodds v. United States Department of Education*, but that decision addressed a motion for a stay on appeal and thus addressed only "likelihood of success on the merits." 845 F.3d 217, 220-21 (6th Cir. 2016). "The *Dodds* Court's finding that the school district did not make its required showing of a likelihood of success on appeal, does not equate to a holding that the failure to allow individuals to use the restroom corresponding with their gender identity is a violation of … Title IX." *D.H. by A.H. v. Williamson Cnty. Bd. of Educ.*, 2022 WL 16639994, at *7 (M.D. Tenn. Nov. 2, 2022); *see also Wallace v. FedEx Corp.*, 764 F.3d 571, 583-85 (6th Cir. 2014) ("[M]otions panels are … not strictly binding upon subsequent panels.").

prohibits "conduct" that is "so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1992). The Policies prohibit far more incidents of expression than allowed under *Davis*, and so they can't possibly be "required" by Title IX. *See* PI-Br. 16-17.

### B. The Policies likely violate the First and Fourteenth Amendments.

PDE is likely to prevail on the merits of its claims because PDE has shown that the District's speech codes unconstitutionally compel speech, regulate speech based on viewpoint and content, and are overbroad. The District has the burden (even at the preliminary-injunction stage) of proving the constitutionality of its speech restrictions. *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). It has not carried that burden.

***Compelled Speech.*** In *Meriwether*, the Sixth Circuit held that "[p]ronouns can and do convey a powerful message implicating a sensitive topic of public concern," that a preferred-pronoun policy compelled the plaintiff "to communicate a messag[e] [that] [p]eople can have a gender identity inconsistent with their sex at birth," and that "preferred pronoun' requirement[s]" were "anathema to the principles underlying the First Amendment." 992 F.3d at 507-08, 510. The District claims that *Meriwether* is inapplicable because the case involved a university professor instead of K-12 students. Opp. 9-10. That is a distinction without a difference here. Policies requiring "preferred pronouns" force speakers to communicate a particular message and thus "compe[l] speech on a matter of public concern." *Meriwether*, 992 F.3d at 510. Although "'the First Amendment does not extend to the in-class curricular speech of teachers in primary and secondary schools,'" *id.* at 505 n.1, it unequivocally *does* protect student speech, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). For the following reasons, those protections apply here.

The District argues that the First Amendment rights of students are not "'automatically coextensive with the rights of adults in other settings'" and so the District "can prohibit student speech

where that speech is inconsistent with the district's 'basic educational mission.'" Opp. 10 (quoting *Hazelwood Sch. Dist. v. Kuhlmeir*, 484 U.S. 260, 266 (1988)). But a "school's interest in teaching good manners is not sufficient … to overcome [students'] interest in free expression." *Mahanoy*, 141 S. Ct. at 2047. Moreover, "schools' regulation of student speech must be consistent with both the *Tinker* standard and *Rosenberger*'s prohibition on viewpoint discrimination." *Barr v. Lafon*, 538 F.3d 554, 571 (6th Cir. 2008). But the District provides no "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Tinker*, 393 U.S. at 514; *Mahanoy*, 141 S. Ct. at 2048 (*Tinker* is a "demanding standard."). And the speech policies clearly impose punishments based on viewpoint. PI-Br. 13; *e.g.*, *Defoe ex rel. Defoe v. Spiva*, 625 F.3d 324, 336 (6th Cir. 2010) ("[S]chools may not impose a viewpoint specific ban on some racially divisive symbols and not others." (cleaned up)). The Olentangy School District is not an exception to the longstanding rule that K-12 school districts cannot force students to profess views they believe to be false or punish them for failing to do so. *See W. Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943).

***Content- and Viewpoint-Based Restrictions.*** The District claims that its policies do not distinguish based on content or viewpoint because they "prohibit *any* discriminatory harassment" based on gender identity and "appl[y] to all students, regardless of their view on the immutability of sex." Opp. 11. That misunderstands content- and viewpoint-based discrimination. Laws are content-based if they apply to speech "based on its communicative content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Here, the Policies' application plainly depends on the "communicative content" of a student's speech. *Id.* For example, if a student says "he" or "him," when another student prefers "she," "her," "they," or "them," the student has violated the Policies. That is a paradigmatic content-based regulation. *Id.*; *see also L.D. Mgmt. Co. v. Gray*, 988 F.3d 836, 839 (6th Cir. 2021) ("Because the message [expressed] makes all the difference, the Act amounts to a content-based regulation of speech.").

That the Policies apply "to all students" is also irrelevant to the viewpoint-discrimination analysis. Opp. 11. Harassment, "as defined by" the District, Opp. 11, includes speech that others find "insulting," "humiliating," "dehumanizing," "derogatory," and "unwanted," PI-Br. 13; Ex. A at 2. Such restrictions are viewpoint-based. *See, e.g.*, *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) ("[A] law disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment."); *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 894 (6th Cir. 2021) (A restriction is "impermissible viewpoint discrimination" when it "prohibit[s] speech purely because it disparages or offends."). Indeed, a statement about gender identity could be considered "insulting" or "derogatory" under the Policies, Opp. 2, "precisely because of its sensitive subject matter" and the "viewpoint it expresses," *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 (3d Cir. 2001) (Alito, J.).

The District claims that eliminating punishments for failing to use preferred pronouns "would not be … neutral" and would "be advancing *PDE's* view that sex is immutable" instead of "the viewpoint that gender is fluid." Opp. 11. That makes no sense. PDE is not asking the District to impose a speech policy requiring students to use only pronouns correlative with biological sex. PDE is asking the District to stop compelling speech one way or another. *Cf. Meriwether*, 992 F.3d at 507 (government advances a viewpoint in a debate by "wield[ing] its authority to categorically silence dissenting viewpoints"). PDE's requested preliminary injunction would simply reinforce that such "judgments are for the individual to make, not for the Government to decree." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000).

As explained, the Policies are *per se* unconstitutional because they are viewpoint-based. PI-Br. 12-13. Even if the Policies were just content-based, they would still need to satisfy strict scrutiny. *See Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 706 (6th Cir. 2020); PI-Br. 14-15. The District makes little effort to meet this burden. It vaguely asserts a need to "protect students and staff from harassing behavior," Opp. 12, but that generalized assertion does not satisfy the First Amendment, *see, e.g.*, *Green*

*v. Miss U.S. of Am., LLC*, 52 F.4th 773, 792 (9th Cir. 2022) ("The state of Oregon has offered only 'eliminating discrimination against LGBTQ individuals' as a compelling interest, but this broad formulation alone cannot suffice."). And the District has no legitimate interest in suppressing student viewpoints it finds disagreeable or distasteful. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 395-96 (1992); PI-Br. 14-15.

The District's narrow-tailoring argument—a single, conclusory statement (at 12) that "the policy is clearly narrowly tailored to protect students and staff from harassing behavior"—fares no better. The District never explains why a different standard (such as the *Davis* standard) would not adequately protect students. *See* PI-Br. 15; *Playboy*, 529 U.S. at 816 ("When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals."). Thus, the District has not met its burden.

**Overbreadth.** The District argues that the Policies are not overbroad because they are "susceptible to a reasonable limiting construction." Opp. 12. But the District refuses to grapple with the text of the Policies, asserting only that "when the policies and student Code of Conduct are read as a whole, it is clear that the District is not policing every hurt feeling of its students and staff." Opp. 12. The District never supplies a textual analysis for how its Policies are "readily susceptible to such a construction." *United States v. Stevens*, 559 U.S. 460, 481 (2010) (cleaned up). Nor can the Court "rewrit[e]" the Policies based on the District's subjective intentions. *Id.* at 480 ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."); *see also Legend Night Club v. Miller*, 637 F.3d 291, 301 (4th Cir. 2011) (finding statute overbroad despite government's assertion that the statute "has been, and will be, enforced only against adult entertainment establishments" because the court could not "read the statute [to] apply only to those licensees"). The First Amendment does not leave students "at the mercy of *noblesse oblige*." *Stevens*, 559 U.S. at 480; *see also Dambrot*, 55 F.3d at 1183 (finding a university policy unconstitutionally broad,

despite the university's promise to not enforce the policy "'to interfere impermissibly with individuals['] right to free speech'").

Independent of that, the Policies are also overbroad because they subject students to discipline for off-campus speech that bears no relation to school activities. In *Mahanoy*, the Court held that any First Amendment "leeway" schools may enjoy due to their unique educational mission is "diminished" when students leave campus at the end of the day. 141 S. Ct. at 2046. The District claims that "*Mahanoy* is not analogous," Opp. 13, but the only difference between this case and *Mahanoy* is that the District's Policies are even more unjustified than the Pennsylvania school district action the Supreme Court held unconstitutional. After all, the District does not deny that this case (unlike *Mahanoy*) involves "political or religious speech that occurs outside school or a school program or activity." *Mahanoy*, 141 S. Ct. at 2046. Thus, the District bears an even heavier "burden to justify intervention." *Id.*

While *Mahanoy* noted that "off-campus behavior … *may* call for school regulation" if it entails "serious or severe bullying or harassment targeting particular individuals," *id.* at 2045 (emphasis added),[6] the District's policies extend far more broadly, *see* PI-Br. 16-17. The Policies can punish speech among friends or conversations between parents and students that never involve the complainant. The speech need not be targeted at any individual in particular. *E.g.*, Ex. D at 9 (prohibiting speech "derogatory towards an individual *or group*" (emphasis added)). The policies can punish a single instance of unwanted speech. *See, e.g.*, Ex. D at 9 ("use … discriminatory language"); Ex. B at 2 ("in any way" and "transmit material"). Instead of punishing "severe" bullying conduct, the policies reach whatever speech that the school or another student subjectively finds, among other things, to be "disparag[ing]," "disruptive," "inappropriate," or "derogatory." Ex. B at 2; Ex. D at 9,

---

[6] The District cites the syllabus preceding the *Mahanoy* opinion. Opp. 13 ("at syllabus"). But "[t]he syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader." *Mahanoy*, 141 S. Ct. at 2040 n.*.

16, 35. And even assuming that the District could regulate such speech, the Policies come nowhere close to satisfying its "heavy burden to justify intervention." *Mahanoy*, 141 S. Ct. at 2046.

### C.    The Policies likely violate parents' Fourteenth Amendment rights.

The District summarizes various Supreme Court cases addressing parental rights in an attempt to show that the laws challenged in those cases are not identical to the Policies at issue here. Opp. 14-15. While *Troxel v. Granville*, 530 U.S. 57 (2000), and other parental-rights cases "did not expressly consider" the speech codes presented here, the Court "cannot avoid applying the force and rationale of these precedents" to this case, "unless [it] close[s] [its] eyes to the basic reasons why certain rights associated with the family have been accorded shelter under the Fourteenth Amendmen[t]" in the first place, *Moore v. City of E. Cleveland*, 431 U.S. 494, 500-01 (1977); *see also Mahanoy*, 141 S. Ct. at 2053 (Alito, J., concurring) (relying on parental-rights cases).[7]

"It is well established that a parent has a [Fourteenth Amendment] right to direct the education and upbringing of his children." *Kanuszewski*, 927 F.3d at 418 (cleaned up). The District does not dispute that if the Policies violate the students' First Amendment rights, then the District exceeds its *in loco parentis* authority when it seeks to regulate student speech inside families' homes. *See* PI-Br. 18-19. In other words, the Policies invade "the zone of parental, rather than school-related, responsibility." *Mahanoy*, 141 S. Ct. at 2046. When that is the case, the District violates the parents' "well established" Fourteenth Amendment rights.

---

[7] The District notes that the Fourteenth Amendment claim is "somewhat conflated in its First Amendment claims of overbreadth." Opp. 15. But government actions giving rise to violations of a child's constitutional rights often overlap with those giving rise to violations of the constitutional rights of the child's parents. *See, e.g., Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396 (6th Cir. 2019) (analyzing alleged violations of children's due process rights and parental rights based on same unlawful act); *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003) (child's Fourth Amendment rights and parents' fundamental rights overlapped).

Finally, the District argues that the rational-basis standard applies. Opp. 14. But when it comes to fundamental parental rights, strict scrutiny applies. *See Kanuszewski*, 927 F.3d at 419 (explaining in the context of parental rights, that "[t]he existence of a fundamental right means that government actions that burden the exercise of the right are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest" (cleaned up)); *see also Troxel*, 530 U.S. at 80 (Thomas, J., concurring) (applying strict scrutiny). The District does not argue that it satisfies any scrutiny level. Nor could it. The District has no compelling interest in suppressing or compelling speech and, even if it had a legitimate interest, the Policies are not narrowly tailored. *See supra* 10; PI-Br. 15. This dooms the policies.

## II.  PDE satisfies the remaining preliminary-injunction criteria.

"Because [PDE] is likely to succeed on its constitutional claims, there is 'no issue as to the existence of the remaining preliminary injunction factors.'" *ACLU of Michigan v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015). Yet the District resists this straightforward conclusion.

***Irreparable Harm:*** The District argues that PDE's injuries are not "imminent and irreparable" even if it is likely to prevail on the merits. Opp. 16. This claim largely repackages the District's standing arguments, which, as explained above, are without merit. In any event, students are already self-censoring, which is itself an injury in violation of the First and Fourteenth Amendments. PDE thus shows an *ongoing* irreparable injury. *See Vitolo*, 999 F.3d at 360 ("'[W]hen constitutional rights are … impaired, irreparable injury is presumed.'"); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 408 (6th Cir. 2022) ("'The loss of First Amendment freedoms, for even minimal periods of time,' amounts to irreparable injury."); PI-Br. 19.

***Balance of Harms and Public Interest:*** The District agrees that the balance of harms and public interest "'merge'" here. Opp. 17. That ends the matter. That is because "no cognizable harm

results from stopping unconstitutional conduct, so 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Vitolo*, 999 F.3d at 360; *see* PI-Br. 19-20.

The District responds that these factors must weigh against an injunction because a preliminary injunction "would open students and staff up to harassment and discrimination in violation of federal laws" and "open the District up to civil liability." Opp. 17. But PDE seeks only to preliminarily enjoin the policies that are infringing parents' and students' constitutional rights. This is not unusual in First and Fourteenth Amendment cases, especially for facial challenges. The District would remain free to draft policies that are "consistent with the [First and Fourteenth Amendment]." *Doe v. Pittsylvania Cnty.*, 842 F. Supp. 2d 927, 935-36 (W.D. Va. 2012). The summer break gives it "months" to do so. *Fitzgerald v. Alcorn*, 2018 WL 4571878, at *3 (W.D. Va. Sept. 24, 2018); *cf. Speech First, Inc. v. Khator*, 603 F. Supp. 3d 480, 482 (S.D. Tex. 2022) ("As summer approaches, enjoinment of the policy will not cause irreparable harm with fewer students on campus."). There is no basis for leaving the overly broad unconstitutional policies in place.

### III. The Court should not require an injunction bond.

The District argues that the Court should use its discretion to order an injunction bond because the "issuance of the injunctive relief sought opens the District up to substantial liability and potential loss of funding" for failing to follow federal antidiscrimination law. Opp. 18. That is wrong, as explained above. *See supra* 6-7. Regardless, "all four preliminary injunction factors—including the public interest factor, by an 'overwhelming' amount—favor [PDE], rendering security an unnecessary measure in this case." *Select Distributors, LLC v. Breeze Smoke, LLC*, 2021 WL 2820985, at *5 (E.D. Mich. July 7, 2021). In addition, waiving the bond is particularly appropriate in cases trying to vindicate constitutional rights. *See, e.g.*, *United Food & Com. Workers Loc. 99 v. Brewer*, 817 F. Supp. 2d 1118, 1128 (D. Ariz. 2011) ("There is no realistic likelihood that Defendants will be harmed by being enjoined from enforcing a law that constitutes viewpoint discrimination in violation of the First Amendment

on its face. No bond will be required."); *Dr. John's, Inc. v. City of Sioux City*, 305 F. Supp. 2d 1022, 1043 (N.D. Iowa 2004) ("Moreover, requiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate.").

## CONCLUSION

PDE respectfully requests that the Court grant PDE's motion for a preliminary injunction.

Date: June 15, 2023

Respectfully submitted,

*s/ Taylor A.R. Meehan*

J. Michael Connolly (admitted *pro hac vice*)
Taylor A.R. Meehan (admitted *pro hac vice*)
James F. Hasson (admitted *pro hac vice*)
Thomas S. Vaseliou (admitted *pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
taylor@consovoymccarthy.com
james@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

Emmett E. Robinson (OH Bar No. 88537)
Trial Attorney
ROBINSON LAW FIRM LLC
6600 Lorain Ave. #731
Cleveland, OH 44102
Telephone: (216) 505-6900
Facsimile: (216) 649-0508
erobinson@robinsonlegal.org

## CERTIFICATE OF SERVICE

I certify that on June 15, 2023, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

*s/ Taylor A.R. Meehan*