# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | | |
|---|---|---|
| **PARENTS DEFENDING EDUCATION** | : | **Case No. 2:23-CV-01595** |
| | : | **Chief Judge Algenon L. Marbley** |
| **Plaintiff,** | : | **Magistrate Judge Kimberly A. Jolson** |
| v. | : | |
| **OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.** | : | **MOTION OF DEFENDANTS TO:** |
| | : | **(1) DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF** |
| **Defendants.** | : | **SUBJECT MATTER JURISDICTION AND STANDING** |
| | : | **AND** |
| | : | **(2) TO CONTINUE HEARING ON PRELIMINARY INJUNCTION PENDING ADJUDICATION OF JURISDICTIONAL ISSUES** |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants Olentangy Local School District Board of Education, Kevin Daberkow, Brandon Lester, Kevin O'Brien, Libby Wallick, LaKesha Wyse, Mark T. Raiff, Randy Wright, and Peter Stern, through counsel, respectfully move this Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

Moreover, pursuant to Fed.R.Civ.P. 16, the Defendants respectfully request this Court continue the hearing set on Plaintiff's Motion for Preliminary Injunction unless and until this Court determines it has jurisdiction over Plaintiff's Complaint for the reason that jurisdiction is a threshold determination and must be made prior to the hearing.

A memorandum in support of both requests is attached hereto and incorporated by reference.

Respectfully submitted,

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)
Myrl H. Shoemaker, III (0099149)
FREUND, FREEZE & ARNOLD
Capitol Square Office Building
65 East State Street, Suite 800
Columbus, OH 43215-4247
Phone: (614) 827-7300
Fax: (614) 827-7303
bfreeze@ffalaw.com
mshoemaker@ffalaw.com
*Counsel for Defendants Olentangy Local*
*School District Board of Education, Mark T.*
*Raiff, Randy Wright, Peter Stern, Kevin*
*Daberkow, Brandon Lester, Kevin O'Brien,*
*Libby Wallick and LaKesha Wyse*

*and*

Jessica K. Philemond (0076761)
Sandra R. McIntosh (0077278)
Mitchell L. Stith (0096759)
SCOTT SCRIVEN LLP
250 E. Broad St., Suite 900
Columbus, OH 43215
jessica@scottscrivenlaw.com
sandra@scottscrivenlaw.com
mitch@scottscrivenlaw.com
*Co-Counsel for Defendant Olentangy Local*
*School District Board of Education*

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

## I.      BACKGROUND

This case involves the claims of four pseudonymous parents asserted by the plaintiff, the non-profit organization called Parents Defending Education ("PDE"), against the Olentangy Local School District Board of Education (the "District" or "Board") and its individually-named Board Members, Kevin Daberkow, Brandon Lester, Kevin O'Brien, Libby Wallick and LaKesha Wyse, as well as former Superintendent Mark T. Raiff and current Chief of Administrative Services Randy Wright, and Assistant Director of Equity and Inclusion Peter Stern (collectively, "Defendants"). See Doc. # 1, generally. PDE, through its anonymous parent-members, ask this Court to enjoin the District from enforcing its policies regarding harassment and personal communication devices. Id.

Defendants now move to dismiss the Complaint for the reasons that this Court lacks subject matter jurisdiction and Plaintiff lacks standing because there is no case or controversy and no injury in fact. Because jurisdiction is a threshold inquiry, Defendants simultaneously move this Court to continue the hearing set on Plaintiff's Motion for Preliminary Injunction unless and until this Court determines it has jurisdiction.

## II.     STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

On April 10, 2023, the District adopted a revised version of Policy 5517 to protect all its students from harassment. See Doc. # 7-1, PAGEID #121. Pursuant to the Policy:

> It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful **harassment**, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.

- 3 -

> The Board will vigorously enforce its prohibition against discriminatory harassment based on race, color, national origin, sex (including sexual orientation and gender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as Third Parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

(Emphasis added).

Moreover, "harassment" is defined as "any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that: A. places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property; B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or C. has the effect of substantially disrupting the orderly operation of a school."

Furthermore, the District also maintains Policy 5136 (*last revised November 9, 2017*), which governs students' personal communication devices ("PCDs"), including tablets and smartphones. Doc. #7-1, PAGEID #133. Pursuant to Policy 5136:

> Students may not use a PCD in any way that might reasonably create in the mind of another person an impression of being **threatened, humiliated, harassed, embarrassed or intimidated**. See Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior. In particular, students are prohibited from using PCDs to: (1) transmit material that is threatening, obscene, disruptive, or sexually explicit or that can be construed as harassment or disparagement of others based upon their race, color, national origin, sex (including sexual orientation/transgender identity), disability, age, religion, ancestry, or political beliefs; and (2) engage in "sexting" - i.e., sending, receiving, sharing, viewing, or possessing pictures, text messages, e-mails or other materials of a sexual nature in electronic or any

- 4 -

> other form. Violation of these prohibitions shall result in disciplinary action. Furthermore, such actions will be reported to local law enforcement and child services as required by law.

(Emphasis added).

The District's Student Code of Conduct echoes these policies and strongly affirms the District's mission "to facilitate maximum learning for each student." Doc. #7-1, PAGEID #142.

On May 11, 2023, Plaintiff filed its Complaint seeking a declaratory judgment and injunctive relief. See Doc. #1, generally. Plaintiff is an organization that holds itself out to prevent politicization of K-12 education. Id., ¶ 14. Plaintiff purportedly brings this action on behalf of unidentified Parents A, B, C, and D, and the unidentified school-aged children of Parents A, B, and D. Id., ¶¶ 15, 68. Parent C's children are not members of PDE. Doc. # 7-5, generally.

Purportedly, the pseudonymous students want to openly discuss their views on gender identity and the immutability of sex but choose not to in the school environment. See Docs. # 7-3, 7-4, 7-5, 7-6. However, the parents and their children do not want the adverse view discussed in the school at all, e.g., that trans and nonbinary people exist. See Doc. # 1, ¶¶ 80 (Parent A voluntarily withdrew child from a class that had flags expressing the teacher's view on gender ideology); 101 (Parent B upset that a teacher gave a survey about pronouns that would permit trans and nonbinary students to be identified by preferred pronouns and cisgender students to be identified by their biological pronouns); 102 (Parent B upset that child was given a writing assignment that permitted the child to express their views on gender); 139 (Parent D upset that a teacher gave a survey about pronouns that would permit trans and nonbinary students to be identified by preferred pronouns and cisgender students to be identified by their biological pronouns). See also, Doc. #7-6, ¶ 19 (Parent D voluntarily withdrew child from Advanced Placement classes where gender identity was discussed); Doc. # 7-3, ¶ 6 (Parent A believes gender should only be discussed with families); Doc. # 7-4, ¶ 6 (same for Parent B); Doc. # 7-5, ¶ 5 (same

- 5 -

for Parent C); Doc. # 7-6, ¶ 6 (same for Parent D). Moreover, despite wanting to openly discuss their views, the parents and students will not identify themselves. Doc. # 1, ¶ 149.

No pseudonymous student has been disciplined pursuant to the aforementioned policies. See id., generally. Moreover, District counsel confirmed that, although purposeful references contrary to another student's identity would violate District policies, students will not be disciplined for expressing their religious views. See Doc. # 13-1. Therefore, students who have a religious belief that sex is immutable are free to openly discuss their views without fear of disciplinary action from the District. Id.

Along with the Complaint, Plaintiff also filed a Motion for Preliminary Injunction. Doc. # 7. Defendants opposed that Motion on June 1, 2023. Doc. # 13. On June 14, 2023, this Court issued an Order setting a hearing on the preliminary injunction for July 24, 2023. Doc. # 14.

The Defendants now move this Court to dismiss Plaintiff's Complaint for the reason that there is no subject matter jurisdiction and Plaintiff lacks standing. Defendants further request this Court continue the hearing set for July 24, 2023 unless and until it determines it has jurisdiction over Plaintiff's Complaint.

## III.    STANDARD

Federal courts are courts of limited jurisdiction. As always, the Court must determine whether subject-matter jurisdiction exists. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). The party invoking federal jurisdiction has the burden of proving jurisdiction exists. Hertz Corp. v. Friend, 559 U.S. 77, 96, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010). The Court must dismiss if it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) motions generally come in one of two forms: a facial attack or a factual attack. Howard v. City of Detroit, Michigan, 40 F.4th 417, 422 (6th Cir. 2022) (quoting Gentek

- 6 -

Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007)). "A motion to dismiss in a declaratory judgment action is considered a factual attack on subject matter jurisdiction." Beach Sales & Eng'g Llc v. Telebrands, Corp., 2015 U.S. Dist. LEXIS 55338, 2015 WL 1930337, at *1 (N.D. Ohio 2015) (quoting Google, Inc. v. Emsat Advanced Geo-Location Tech., LLC, 2010 U.S. Dist. LEXIS 6102, 2010 WL 55685, at *2 (N.D. Ohio 2010). With a factual attack, *no presumptive truthfulness applies to the allegations in the complaint* and the district court has wide discretion to review evidence outside of the complaint to satisfy itself that it possesses jurisdiction. Howard, 40 F.4th at 422.

## IV.   LEGAL ANALYSIS

### A. This Court lacks Subject Matter Jurisdiction Because There is no Case or Controversy.

The Declaratory Judgment Act does not confer federal subject-matter jurisdiction on the Court itself. Heydon v. MediaOne of Se. Michigan, Inc., 327 F.3d 466, 470 (6th Cir. 2003). Rather, the complaint must state an independent basis for subject-matter jurisdiction. Id. See Toledo v. Jackson, 485 F.3d 836, 839 (6th Cir. 2007) ("Before invoking the Act . . . a federal court must have jurisdiction already under some other federal statute.") (internal quotations omitted).

The United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2.  One element of the case-or-controversy requirement is that a plaintiff has standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

### 1.   Plaintiff lacks standing in this matter because it failed to identify and name its allegedly aggrieved members.

A voluntary membership organization has standing to sue on behalf of its members when (a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect

- 7 -

are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. ACLU of Ohio Found., Inc. v. Ashbrook, 375 F.3d 484, 489 (6th Cir.2004).

To satisfy the first requirement, the organization must **identify and name** a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct. Tennessee Republican Party (16-3360) v. SEC, 863 F.3d 507, 520 (6th Cir.2017) (the plaintiff-organization must name the individuals who were harmed) quoting Summers v. Earth Island Inst., 555 U.S. 488, 498-99, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) (a plaintiff **must name the members** of an organization who were injured). The weight of authority in federal courts confirms that at least one member *must be named* for associational standing. See Waskul v. Washtenaw Cty. Community Mental Health, 900 F.3d 250, 255 (6th Cir.2018); Draper v. Healey, 827 F.3d 1, 3 (1st Cir. 2016) (holding that an association has no standing to sue where a complaint fails to identify any member of the group who allegedly was injured). See also, Pen Am. Ctr., Inc. v. Trump, 448 F. Supp. 3d 309, 321 (S.D.N.Y.2020); Equal Vote Am. Corp. v. Pelosi, 397 F. Supp. 3d 503, 509 (S.D.N.Y. 2019) ("in order to bring claims on behalf of its members under the 'associational standing' doctrine, an organizational plaintiff such as EVA must identify, by name, at least one member with standing."); Residents & Families United to Save Our Adult Homes v. Zucker, No. 16-cv-1683 (NGG) (RER), 2018 U.S. Dist. LEXIS 36559, (E.D.N.Y. Mar. 5, 2018); Do No Harm v. Pfizer Inc., S.D.N.Y. No. 1:22-cv-07908 (JLR), 2022 U.S. Dist. LEXIS 227006, at *21 (Dec. 16, 2022).

Here, Plaintiff's Complaint necessarily fails to establish associational standing for the sole reason that it has not named a single member. In accordance with well-settled United States

FREUND, FREEZE & ARNOLD
A Legal Professional Association

Supreme Court precedent, Plaintiff's failure to do so is fatal.  It has no standing to proceed and the Court must dismiss the Complaint.

Even *if* Plaintiff had named its members, as required, standing still does not exist for its pseudonymous members because these members cannot show a concrete injury in fact.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and internal quotation marks omitted).

### 2.  Plaintiff's unidentified members cannot show an injury-in-fact.

Article III's bill of lading allows federal courts to deliver judgments on real disputes, not hypothetical ones, to resolve concrete disputes, not to pronounce judgments on theoretical disputes that may or may not materialize and, if they do, may appear in a variety of forms. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101-03, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). That rules out advisory pronouncements, which the case-or-controversy requirement has long forbidden. Summers v. Earth Island Inst., 555 U.S. 488, 492-93, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341-42, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006); Muskrat v. United States, 219 U.S. 346, 361-63, 31 S. Ct. 250, 55 L. Ed. 246, 46 Ct. Cl. 656 (1911).

The Declaratory Judgment Act does not alter these rules or otherwise enable federal courts to deliver "an expression of opinion" about the validity of laws. Muskrat v. United States, 219 U.S. 346, 362, 31 S.Ct. 250, 55 L.Ed. 246 (1911). Only in "case[s] of actual controversy" may the federal courts "declare" the parties' "rights and other legal relations" without granting traditional remedies such as damages or an injunction. 28 U.S.C. § 2201(a). The Act does not "change the essential requisites for the exercise of judicial power." Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 325, 56 S. Ct. 466, 80 L. Ed. 688 (1936). All it does is create an alternative remedy—a declaratory judgment—for existing cases or controversies, a point confirmed by the Supreme

- 9 -

Court's long equation of the Act's "actual controversy" requirement with Article III's case-or-controversy imperative. <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 239-40, 57 S. Ct. 461, 81 L. Ed. 617 (1937).

Therefore, a plaintiff must plausibly allege facts that, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (quotation omitted). However, a plaintiff *cannot* sue simply to avoid a "*possible future injury*." <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (quotation omitted). The harm must be *actual* or "*certainly impending*." <u>Id.</u> at 410. To satisfy the case or controversy requirement, the dispute "must be definite and concrete" and must allow for "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." <u>Haworth</u>, 300 U.S. at 240-41. Without the presence of an actual case or controversy, this Court lacks jurisdiction even for alleged Constitutional claims. <u>Warth v. Seldin</u>, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); <u>Preiser v. Newkirk</u>, 422 U.S. 395, 403, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975).

> a. *Plaintiff's unidentified students have not suffered and are not in imminent risk of suffering any concrete injuries.*

With respect to First Amendment litigants, the Supreme Court is emphatic: "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." <u>Laird</u>, 408 U.S. at 13-14; see also <u>Warth</u>, 422 U.S. at 501. Absent proof of a *concrete* harm, where a First Amendment plaintiff only alleges *inhibition* of speech, the federal courts routinely hold that no standing exists. See, e.g., <u>Grendell v. Ohio Supreme Court</u>, 252 F.3d 828, 834 (6th Cir. 2001) ("[F]ears of prosecution cannot be merely 'imaginative or

- 10 -

speculative.'" (quoting Younger v. Harris, 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)));

Adult Video Ass'n v. U.S. Dep't of Justice, 71 F.3d 563, 566 (6th Cir. 1995); United Presbyterian

Church in the U.S.A. v. Reagan, 238 U.S. App. D.C. 229, 738 F.2d 1375, 1380 (D.C. Cir. 1984)

(distinguishing a chilling effect from "the immediate threat of concrete, harmful action").

     In Morrison v. Bd. of Edn., 521 F.3d 602, (6th Cir.2008), a high school student filed suit

in federal court against the Board of Education for his school district, taking issue with the district's

policies, speech codes, and mandatory training. The student was a self-proclaimed Christian who

believes that homosexuality is a sin. He further believed that part of his responsibility as a Christian

was to tell others when their conduct did not comport with his understanding of Christian morality.

His school district had a written policy prohibiting students from making stigmatizing or insulting

comments regarding another student's sexual orientation. Wary of potential punishment, [the

plaintiff] remained silent with respect to his personal beliefs, but challenged in federal court the

Board's right to stifle his speech." The Sixth Circuit unequivocally held that the plaintiff's claim

involved his *own choice* "to chill his speech based on his *perception* that he would be disciplined

for speaking." Id. at 610 (emphasis added). The Court noted that whether the plaintiff *would have*

been punished had he chosen to speak was purely speculative. Accordingly, he failed to

demonstrate a concrete harm and his case was dismissed. Id.

     See also, Rock for Life-UMBC v. Hrabowski, 411 F.App'x 541, 549 (4th Cir.2010)

("plaintiffs may not assert claims for damages against a speech policy that was never actually

applied to them. In order to establish their standing to challenge [the university's] code of conduct,

the plaintiffs must first demonstrate an injury-in-fact through the application of that provision."

Affirming that self censorship does not produce an injury-in-fact); Glass v. Paxton, 900 F.3d 233,

236 (5th Cir.2018) (professors lacked U.S. Const. art. III standing to raise First Amendment

allegations to challenge a university policy prohibiting professors from banning concealed weapons in their classrooms, because, notwithstanding likely future university disciplinary, they opted to *self-censor* their speech based on the hypothetical future decisions of students);

Here, Plaintiff's Complaint makes certain for the Court that no case or controversy exists because the unidentified students have self-censored out of baseless speculation they will be subject to discipline for referring to other students by pronouns with which they do not identify. See <u>Doc. # 1</u>, ¶¶. 76, 78, 79, 84, 85, 98, 99, 106, 117, 122, 136, 137, 144. As in <u>Morrison</u>, there is no controversy because the unidentified students have silenced *themselves*. The Plaintiff here simply complains of a subjective, prospective chill which has time and again been found insufficient to confer standing on this Court.  Moreover, the policies Plaintiff complains of would not subject the students to discipline for expressing their religious views about gender.  Rather, the policies could subject the students to discipline if they engage in the harassment of trans and nonbinary students as defined in the policy.  "Harassment" is defined as "any **threatening, insulting, or dehumanizing** gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that: A. places a student or school employee in **reasonable fear of harm** to his/her person or damage to his/her property; B. has the effect of **substantially interfering** with a student's educational performance, opportunities, or benefits, or an employee's work performance; or  C. has the effect of **substantially disrupting** the orderly operation of a school." <u>Doc. # 7-1</u>, PAGEID #121.  The only way for Plaintiff to claim an injury-in-fact based on future conduct is for the unidentified students to affirm to this Court that not only do then intend on speaking their views about gender, but they intend to do so in a manner that threatens, insults, and dehumanizes their fellow students to such an extent that it substantially interferes with their educational environment.  However, Plaintiff unequivocally alleges the

FREUND, FREEZE & ARNOLD
A Legal Professional Association

opposite—that the parents have taught their child to be kind and respectful to others and that the children have no ill-will or animosity toward those who identify as trans or nonbinary.  Doc. # 1, ¶¶ 72, 73, 92, 93, 113, 114, 130.

Accordingly, it is clear there are numerous contingencies that would need to occur before the unidentified students would be disciplined for their speech about gender: first, they would need to knowingly and intentionally harass a fellow student or staff as defined in the policy, then the victim of the harassment would need to report its occurrence, then the District would follow either the informal or formal complaint procedure during which the reported harassment would be fully investigated, and then the District would decide whether and to what extent discipline should be imposed on the alleged harasser.  Yet, as the pseudonymous students alleged, they don't want to harass their fellow students and staff, they simply want to openly discuss their views on gender identity and the immutability of sex. See Docs. # 7-3, 7-4, 7-5, 7-6.  Because the students, through Plaintiff, aren't asking this Court to allow them to harass others based on their views on gender and the District's unequivocal confirmation that they will not be disciplined for discussing their religious views, there is simply no controversy to resolve.  Accordingly, this Court lacks subject matter jurisdiction and this case must be dismissed.

> b. *Plaintiff's unidentified parent members have not suffered and will not imminently suffer any concrete injuries.*

The Fourteenth Amendment "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." Washington v. Glucksberg, 521 U.S. 702, 703 (1997). "Substantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." Reno v. Flores, 507 U.S. 292, 302 (1993) (citations, alterations, and internal quotation omitted). Courts recognize that

FREUND, FREEZE & ARNOLD
A Legal Professional Association

parents have the "right to direct the education and upbringing of one's children[,]" but this is a "limited" right, "neither absolute nor unqualified." <u>Stevenson v. Blytheville Sch. Dist. #5</u>, 800 F.3d 955, 967 (8th Cir. 2015). The Sixth Circuit Court of Appeals has further articulated its standard for assessing the rights of parents with respect to the education of their children:

> The critical point is this: While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities." <u>Goss v. Lopez</u>, 419 U.S. 565, 578 (1975).

<u>Blau v. Fort Thomas Public School Dist.</u>, 401 F.3d 381, 395-396 (6th Cir. 2005) (emphasis original).

Here, it appears Plaintiff contends that the policies preventing students from harassing one another off-campus violate the parents' fundamental rights to make decisions concerning the care, custody, and control of their children. See <u>Doc. # 7</u>, p. 24. Yet, the parents fail to allege an injury in this regard. Rather, they specifically confirm that they have raised their children to believe biological sex is immutable and that their children do in fact believe such. <u>Docs. # 7-3, 7-4, 7-5, 7-6</u>. The parents then claim they've *questioned* how *they want* to continue instructing their children how to behave. <u>Id.</u> Yet, this is their choice (and is a tenuous, hypothetical choice at that). These parents remain free to continue to teach their children their views on gender. These parents remain free to instruct their children on how they should behave at school, so long as they don't instruct their children to *harass* other people as defined in the policy. Moreover, the parents also contend that they want their children to be educated in an environment that allows discussion on gender identity. <u>Id.</u> The Complaint further confirms that the District offers such opportunities, in

- 14 -

that the subject students have been given the opportunity to express these views through writing assignments and pronoun surveys.  See, e.g., Doc. # 1, ¶¶ 80, 101, 102, 139.

Accordingly, it is clear that the unidentified parents have not suffered any concrete injury. Moreover, their hypothetical injuries would be of their own doing.  No District policy tells the parents and students that they cannot discuss the fluidity or immutability of gender in their homes. No District policy tells the parents and students that they will be disciplined for discussing their religious views on gender.  No District policy tells parents they must educate their children to believe that gender is fluid.  Therefore, the unidentified parents lack standing for their purported Fourteenth Amendment challenges and the Complaint must be dismissed.

### B. This Court Should Stay the Injunction Hearing Unless and Until it Finds it has Subject Matter Jurisdiction.

Subject-matter jurisdiction is the power of a federal court to hear a case properly before it. Without that power, even the most lively controversy simply cannot be heard in federal court.  Fed. Express Corp. v. Tennessee Pub. Serv. Com., 693 F.Supp. 598, 608 (M.D.Tenn.1988).

Here, *before* entertaining the merits of Plaintiff's request for a preliminary injunction, the Court must determine whether or to what extent it has jurisdiction. See, e.g., American Telecom Co., L.L.C. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) ( "Subject matter jurisdiction is always a threshold determination.") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S. Ct. 1003, 1010, 140 L. Ed. 2d 210 (1998)).  Accordingly, Defendants respectfully move this Court to continue the hearing set for the preliminary injunction and stay the rescheduling unless and until this Court determines that it has subject matter jurisdiction over Plaintiff's Complaint.

FREUND, FREEZE & ARNOLD
A Legal Professional Association

## V.     CONCLUSION

Based on the foregoing, Defendants Olentangy Local School District Board of Education, Kevin Daberkow, Brandon Lester, Kevin O'Brien, Libby Wallick, LaKesha Wyse, Mark T. Raiff, Randy Wright, and Peter Stern respectfully request this Court dismiss Plaintiff's Complaint for the reason that this Court lacks subject matter jurisdiction and Plaintiff lacks standing because there is no case or controversy and no injury in fact. Because jurisdiction is a threshold inquiry, Defendants simultaneously request that this Court to continue the hearing set on Plaintiff's Motion for Preliminary Injunction unless and until this Court determines it has jurisdiction.

Respectfully submitted,

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)
Myrl H. Shoemaker, III (0099149)
FREUND, FREEZE & ARNOLD
Capitol Square Office Building
65 East State Street, Suite 800
Columbus, OH  43215-4247
Phone: (614) 827-7300
Fax: (614) 827-7303
bfreeze@ffalaw.com
mshoemaker@ffalaw.com
*Counsel for Defendants Olentangy Local*
*School District Board of Education, Mark T.*
*Raiff, Randy Wright, Peter Stern, Kevin*
*Daberkow, Brandon Lester, Kevin O'Brien,*
*Libby Wallick and LaKesha Wyse*

*and*

- 16 -

Jessica K. Philemond (0076761)
Sandra R. McIntosh (0077278)
Mitchell L. Stith (0096759)
SCOTT SCRIVEN LLP
250 E. Broad St., Suite 900
Columbus, OH 43215
jessica@scottscrivenlaw.com
sandra@scottscrivenlaw.com
mitch@scottscrivenlaw.com
*Co-Counsel for Defendant Olentangy Local
School District Board of Education*

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was served this 27th day of June 2023, via the Court's electronic filing system, upon:

| | |
|---|---|
| Emmett E. Robinson (OH Bar No. 88537) | J. Michael Connolly |
| Trial Attorney | Taylor A.R. Meehan |
| ROBINSON LAW FIRM LLC | James F. Hasson |
| 6600 Lorain Ave. #731 | Thomas S. Vaseliou |
| Cleveland, OH 44102 | CONSOVOY McCARTHY PLLC |
| Telephone: (216) 505-6900 | 1600 Wilson Blvd., Ste. 700 |
| Facsimile: (216) 649-0508 | Arlington, VA 22209 |
| erobinson@robinsonlegal.org | mike@consovoymccarthy.com |
| Counsel for Plaintiff | taylor@consovoymccarthy.com |
| | james@consovoymccarthy.com |
| | tvaseliou@consovoymccarthy.com |

/s/ Bartholomew T. Freeze
Bartholomew T. Freeze (0086980)

FREUND, FREEZE & ARNOLD
A Legal Professional Association