**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

PARENTS DEFENDING EDUCATION

*Plaintiff,*

v.

OLENTANGY LOCAL SCHOOL
DISTRICT BOARD OF EDUCATION, *et al.*,

*Defendants.*

Case No. 2:23-cv-01595

**PARENTS DEFENDING EDUCATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.  PDE's use of pseudonyms is consistent with Article III and other federal rules. ........................ 3

    A.  Anonymity of standing members is consistent with Article III. ........................................... 3

        1.  *Summers* requires associations to identify specific members with standing, not divulge their legal names. ........................................... 3

        2.  Courts routinely reject the argument that *Summers* regulates the use of pseudonyms. ........................................................................ 7

        3.  No circuit has held that an association lacks standing because it referred to its members with pseudonyms. ........................................ 8

    B.  Pseudonymity is regulated by other rules, not Article III. ..................................................... 9

II.  The District's remaining standing arguments fail. ...................................................................... 11

    A.  The Students have plausibly alleged an injury in fact. ............................................................ 12

    B.  The Parents have plausibly alleged an injury in fact for the Fourteenth Amendment claim. ........................................................................ 17

CONCLUSION ......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*,
    143 S. Ct. 2298 (2023) .................................................................................................. 14, 18

*Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
    41 F.4th 586 (D.C. Cir. 2022) .......................................................................................... 4, 6, 7

*Alexis Bailly Vineyard, Inc. v. Harrington*,
    931 F.3d 774 (8th Cir. 2019) ............................................................................................ 12, 13

*Armour & Co. v. Wantock*,
    323 U.S. 126 (1944) .............................................................................................................. 6

*Atkins v. Crowell*,
    945 F.3d 476 (6th Cir. 2019) ................................................................................................ 6

*B.R. v. F.C.S.B.*,
    17 F.4th 485 (4th Cir. 2021) ................................................................................................ 9

*Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*,
    2016 WL 4269080 (S.D. Ohio Aug. 15, 2016) .................................................................... 10

*Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc.*,
    448 F.3d 138 (2d Cir. 2006) ................................................................................................ 7

*Borden v. United States*,
    141 S. Ct. 1817 (2021) .......................................................................................................... 6

*Brown v. Davenport*,
    142 S. Ct. 1510 (2022) .......................................................................................................... 6

*Const. Party of Penn. v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) ................................................................................................ 2

*Deja Vu of Nashville, Inc. v. Metro. Gov't*,
    274 F.3d 377 (6th Cir. 2001) .............................................................................................. 15

*DHS v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) .......................................................................................................... 8

*Disability Rts. N.J., Inc. v. Velez*,
    2011 WL 2976849 (D.N.J. July 20, 2011) .......................................................................... 10

*Do No Harm v. Pfizer*,
    2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) .................................................................... 9

*Doe v. Stincer*,
    175 F.3d 879 (11th Cir. 1999) .............................................................................................. 7

*Douglas Cnty. Sch. Dist. RE-1 v. Douglas Cnty. Dep't of Pub. Health*,
    2021 WL 5106284 (D. Colo. Oct. 21, 2021) ...................................................................... 10

*Draper v. Healey*,
    827 F.3d 1 (1st Cir. 2016) .................................................................................................... 8

*Equal Vote Am. Corp. v. Pelosi*,
   397 F. Supp. 3d 503 (S.D.N.Y. 2019) ..................................................................... 8

*FAIR v. Rumsfeld*,
   291 F. Supp. 2d 269 (D.N.J. 2003) ............................................................... 5, 6, 10

*FEC v. Cruz*,
   142 S. Ct. 1638 (2022) ........................................................................................ 14, 18

*Fischer v. Thomas*,
   52 F.4th 303 (6th Cir. 2022) .................................................................. 12, 14, 15, 16

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) .................................................................................................. 4

*Glass v. Paxton*,
   900 F.3d 233 (5th Cir. 2018) .................................................................................. 17

*Hamman v. UCF Bd. of Trustees*,
   2021 WL 2828313 (M.D. Fla. Mar. 2, 2021) ............................................................. 2

*Hancock Cnty. Bd. of Sup'rs v. Ruhr*,
   487 F. App'x 189 (5th Cir. 2012) ......................................................................... 5, 7

*Harrell v. Fla. Bar*,
   608 F.3d 1241 (11th Cir. 2010) ............................................................................... 13

*Howard v. City of Detroit*,
   40 F.4th 417 (6th Cir. 2022) ..................................................................................... 2

*Humane Soc'y of the U.S. v. USDA*,
   2021 WL 1593243 (C.D. Cal. Mar. 26, 2021) ....................................................... 5, 6

*Hunt v. Washington State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ........................................................................................... 10, 11

*Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*,
   927 F.3d 396 (6th Cir. 2019) ............................................................................. 17, 18

*Lee v. Weisman*,
   505 U.S. 577 (1992) ................................................................................................ 15

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
   800 F.3d 99 (3d Cir. 2015) ....................................................................................... 2

*Log Cabin Republicans v. United States*,
   658 F.3d 1162 (9th Cir. 2011) ................................................................................. 10

*Log Cabin Republicans v. United States*,
   716 F. Supp. 2d 884 (C.D. Cal. 2010) .................................................................... 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 2, 12

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*,
   141 S. Ct. 2038 (2021) ............................................................................................ 18

*Marszalek v. Kelly*,
 2021 WL 2350913 (N.D. Ill. June 9, 2021)...................................................................5

*McGlone v. Bell*,
 681 F.3d 718 (6th Cir. 2012)........................................................................................15

*Members of Same v. Rumsfeld*,
 321 F. Supp. 2d 388 (D. Conn. 2004) .........................................................................10

*Menders v. Loudoun Cnty. Sch. Bd.*,
 65 F.4th 157 (4th Cir. 2023).........................................................................................17

*Meriwether v. Hartop*,
 992 F.3d 492 (6th Cir. 2021)........................................................................................12

*Miller v. City of Cincinnati*,
 870 F. Supp. 2d 534 (S.D. Ohio 2012) ..........................................................................2

*Morrison v. Bd. of Edu.*,
 521 F.3d 602 (6th Cir. 2008) ..................................................................................16, 17

*Mosley v. Kohl's Dep't Stores, Inc.*,
 942 F.3d 752 (6th Cir. 2019)..........................................................................................2

*NAACP v. Trump*,
 298 F. Supp. 3d 209 (D.D.C. 2018) ..........................................................................8, 10

*Nat'l Pork Producers Council v. Ross*,
 143 S. Ct. 1142 (2023).................................................................................................5, 6

*National Council of La Raza v. Cegavske*,
 800 F.3d 1032 (9th Cir. 2015) .......................................................................................7

*New York v. U.S. Dep't of Com. (Census Case)*,
 351 F. Supp. 3d 502 (S.D.N.Y.) ................................................................................6, 10

*Ohio Nat. Life Ins. Co. v. United States*,
 922 F.2d 320 (6th Cir. 1990) .........................................................................................2

*Online Merchants Guild v. Cameron*,
 995 F.3d 540 (6th Cir. 2021) ...................................................................................13, 14

*Ostrewich v. Tatum*,
 --- F.4th ----, 2023 WL 4231608 (5th Cir. June 28, 2023) ...........................................13

*P.M. v. Evans-Brant Cent. Sch. Dist.*,
 2008 WL 4379490 (W.D.N.Y. Sept. 22, 2008)...........................................................10

*Parsons v. U.S. DOJ*,
 801 F.3d 701 (6th Cir. 2015) ...................................................................................12, 13

*Penn. Am. Ctr., Inc. v. Trump*,
 448 F. Supp. 3d 309 (S.D.N.Y. 2020) ...........................................................................8

*R.A.V. v. City of St. Paul*
 505 U.S. 377 (1992) ........................................................................................................8

*Residents & Fams. United to Save Our Adult Homes v. Zucker,*
   2018 WL 1175152 (E.D.N.Y. Mar. 6, 2018) ............................................................8

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,*
   487 U.S. 781 (1988) ..............................................................................................14

*Rock for Life-UMBC v. Hrabowski,*
   411 F. App'x 541 (4th Cir. 2010) ..........................................................................17

*Sandusky Cnty. Democratic Party v. Blackwell,*
   387 F.3d 565 (6th Cir. 2004) .................................................................................12

*SFFA v. Harvard,*
   143 S. Ct. 2141 (2023) ...........................................................................................11

*SFFA v. Harvard,*
   261 F. Supp. 3d 99 (D. Mass. 2017) ......................................................................11

*SFFA v. UNC,*
   2018 WL 4688388 (M.D.N.C. Sept. 29, 2018) .......................................................11

*Snider v. Melindez,*
   199 F.3d 108 (2nd Cir. 1999) ..................................................................................9

*Speech First v. Fenves,*
   979 F.3d 319 (5th Cir. 2020) ......................................................................12, 13, 16

*Speech First v. Schlissel,*
   939 F.3d 756 (6th Cir. 2019) ...........................................................................passim

*Speech First, Inc. v. Cartwright,*
   32 F.4th 1110 (11th Cir. 2022) .........................................................................5, 15

*Speech First, Inc. v. Schlissel,*
   333 F. Supp. 3d 700 (E.D. Mich. 2018) .................................................................1, 5

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) .......................................................................................3, 4, 6, 7

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ............................................................................................12, 15

*Tenn. Republican Party v. SEC,*
   863 F.3d 507 (6th Cir. 2017) ...................................................................................8

*UAW v. Brock,*
   477 U.S. 274 (1986) ...............................................................................................10

*Waskul v. Washtenaw Cty. Community Mental Health,*
   900 F.3d 250 (6th Cir. 2018) ...................................................................................8

*Wollschlaeger v. Governor,*
   848 F.3d 1293 (11th Cir. 2017) .............................................................................12

**Rules**

Fed. R. Civ. P. 17 .....................................................................................................9

Fed. R. Civ. P. 5.2 ....................................................................................................9

# INTRODUCTION

In response to PDE's preliminary-injunction motion, the District spent nearly 2,400 words challenging PDE's standing. *See* Dkt. 7 at 5-8. PDE's reply explained why each of the District's arguments fell short. *See* Dkt. 15 at 2-7. In its Rule 12(b)(1) motion to dismiss, the District raises a new argument, rehashes others, and abandons the rest. As before, all the District's arguments fail.

Unlike at the preliminary stage, the District now argues that PDE lacks associational standing unless it publicly reveals the identities of its members—and thus the identities of their *minor children*— when it files a complaint. But neither the Supreme Court nor any circuit court across the country has adopted this radical theory of standing. Because standing is a jurisdictional issue, the District's position would prohibit every association from using pseudonyms for its members, no matter how strong their claim to anonymity. Not immigrants who are here illegally. Not gay soldiers during Don't Ask Don't Tell. Not black members of the NAACP in the Jim Crow South. No one. That rule would devastate a cross-ideological array of associations, from the ACLU to the Chamber of Commerce, from religious groups to student groups and more. Unsurprisingly, then, the Sixth Circuit has failed to blink an eye when associations use pseudonyms to establish standing. *See, e.g.*, *Speech First v. Schlissel*, 939 F.3d 756 (6th Cir. 2019); *Speech First, Inc. v. Schlissel*, 333 F. Supp. 3d 700, 707 (E.D. Mich. 2018) ("The Complaint describes three of these students: which it identifies as 'Student A', 'Student B', and 'Student C.'"), *vacated and remanded*, 939 F.3d 756 (6th Cir. 2019). This Court should reject the District's position.

The rest of the District's standing arguments are retreads from its brief in opposition to PDE's motion for preliminary injunction. They fare no better the second time. *See* Dkt. 15 at 2-7. PDE has identified students that intend to engage in arguably protected speech, the expression is arguably proscribed by the challenged policies, and the students face a credible threat of enforcement. That is all that Article III requires. The Court should deny the District's motion to dismiss.

## ARGUMENT

Motions to dismiss for lack of standing can be facial or factual. A facial attack questions "the sufficiency" of the complaint—whether the complaint plausibly alleges standing. *Howard v. City of Detroit*, 40 F.4th 417, 422 (6th Cir. 2022); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Courts address facial attacks by applying the liberal notice-pleading standard: confining themselves to the complaint, assuming its factual allegations are true, reading general allegations to include the necessary specifics, and construing everything in the plaintiff's favor. *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019); *Lujan, v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A factual attack, by contrast, questions "the existence" of a fact by "weigh[ing] evidence" needed to prove standing. *Miller v. City of Cincinnati*, 870 F. Supp. 2d 534, 539 (S.D. Ohio 2012). Courts address factual attacks by considering outside evidence and deciding, "after discovery," who is right "by a preponderance of the evidence." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

Contra the District, MTD 6-7, the District's motion is a facial challenge, not a factual one. The District challenges PDE's standing on only two grounds: (1) that the complaint doesn't disclose members' real names, MTD 7-9, and (2) that the challenged policies do not objectively chill speech, MTD 10-13. Those are issues of law that turn on the face of the complaint; indeed, the District presented no outside evidence about its policies that would create a factual dispute. *Cf. Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (arguments not supported by external evidence cannot be factual attacks because "[a] factual attack requires a factual dispute"); *Hamman v. UCF Bd. of Trustees*, 2021 WL 2828313, at *4 & n.6 (M.D. Fla. Mar. 2, 2021) (same). The challenge is thus a facial attack. Regardless, PDE overcomes a factual attack as well.

## I.    PDE's use of pseudonyms is consistent with Article III and other federal rules.

### A.    Anonymity of standing members is consistent with Article III.

The District claims that Supreme Court and Sixth Circuit precedent hold that an association's complaint "must **identify and name** a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." MTD 8 (emphasis original). That is wrong. PDE's use of pseudonyms does not violate Article III or *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)—a case involving no pseudonyms. At most, *Summers* requires specificity, not legal names, and PDE identified specific members here. The District's misreading has been rejected by many other courts. And no circuit has embraced it.

#### 1.    *Summers* requires associations to identify specific members with standing, not divulge their legal names.

In *Summers*, a collective of environmental associations challenged federal regulations concerning the maintenance of national forests. Although federal law required large forest projects to go through a lengthy approval process, the regulations in question exempted certain projects from those requirements. 555 U.S. at 490, 493. That exemption, the associations argued, prevented their members from commenting during the approval process. Their inability to comment, in turn, allowed for approval of environmentally risky projects, which harmed the associations' aesthetic and recreational interests in the forests. *Id.* at 494.

The Supreme Court held that the *Summers* plaintiffs lacked standing. *See id.* at 500. Their theory was "'difficult'" to prove, the Court noted, because the members were not themselves "'the object of'" the regulations. *Id.* at 493. To prove standing, the associations needed to identify a member who had concrete plans to visit a specific area; that area needed to be subject to a specific project; that project needed to be covered by the challenged regulations; and those regulations needed to deprive that member of his right to comment. *Id.* at 494. The associations did not make that showing. They identified a specific project, but the controversy over that project was moot because the parties had

settled. *Id.* at 494-95, 497. The associations identified a specific member, but the only projects he specified affected places that he had no concrete plans to visit. *Id.* at 496, 500.

All that remained was the dissent's theory of standing. Though the case had proceeded past trial, the dissent pointed to the associations' "pleadings," where they alleged that they had "'thousands of members in California' who 'use and enjoy the Sequoia National Forest.'" *Id.* at 497; *see id.* at 502 (Breyer, J., dissenting). Given the sheer number of people represented, the dissent deemed it "probable" that the regulations would injure at least one of the associations' members. *Id.* at 497 (majority).

The Court rejected this theory on both form and substance. On form, the Court faulted the dissent for relying on the associations' "self-descriptions of their membership" in their pleadings, instead of "verifying the facts" through "individual affidavits" or some other "'factual showing.'" *Id.* at 499. On substance, the Court deemed the dissent's theory of "probabilistic standing" too "speculati[ve]" to prove standing. *Id.* The Court's "prior cases" required associations to make "specific allegations" that an "identified" member "would" suffer harm, not "statistical probabilities" that such a member likely exists. *Id.* at 498. The precedent required associations to "identify members who have suffered the requisite harm." *Id.* at 499. And "[t]his requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Id.* at 498-99 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 235 (1990)). The associations could not generate standing by predicting that "some (unidentified) members have plan[s] to visit some (unidentified) small parcels affected by the [regulations] and will suffer (unidentified) concrete harm as a result." *Id.* at 497-98.

PDE's complaint complies with *Summers*, even if the Court's discussion of identifying specific members applied at the pleading stage. PDE "did not offer only unsubstantiated generalizations about the [challenged policies'] effect on its membership." *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022) (distinguishing *Summers*). Nor did its complaint

4

"merely alleg[e] that some members might" have standing; it "alleg[ed] that some members were suffering." *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (cleaned up) (distinguishing *Summers*). It "'identified'" three members and gave "particular facts … going to how [each policy] allegedly injures them." *Humane Soc'y of the U.S. v. USDA*, 2021 WL 1593243, at *6 (C.D. Cal. Mar. 26, 2021) (distinguishing *Summers*). It named those members ("Parent A," "Parent B," "Parent C," and "Parent D"). *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1114 (11th Cir. 2022) (standing where a member was "identified as 'Student A' in Speech First's complaint"); *see also Schlissel*, 939 F.3d at 765 ("Speech First has standing … because its members face an objective chill"); *Schlissel*, 333 F. Supp. 3d at 707 (identifying "Student A," "Student B," and "Student C" in complaint). And for each parent member, it provided their child's general grade level at the school within the district, what speech they would like to engage in, why the challenged policies chill that speech, the parents' beliefs and experience with the District, and even why they prefer anonymity. Compl. ¶¶67-149. "There are no remaining uncertainties as to the effect of the [challenged policies] on [PDE's] members." *FAIR v. Rumsfeld*, 291 F. Supp. 2d 269, 288 (D.N.J. 2003). Indeed, "it is not clear how a more specific identification could be accomplished at this stage" except by adding their legal names, "a step that associational standing does not require." *Marszalek v. Kelly*, 2021 WL 2350913, at *4 (N.D. Ill. June 9, 2021) (citing *Disability Rts. Wisconsin, Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 803 (7th Cir. 2008)) (distinguishing *Summers*).

In short, the District appears to think that *Summers* banned the use of pseudonyms because the opinion used the words "name" and "naming" once, but the Supreme Court has warned courts—recently and repeatedly—not to read its opinions that way: "The language of an opinion is not always to be parsed as though we were dealing with language of a statute. Instead, we emphasize, our opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1155 (2023) (cleaned up). "[W]hen it comes to" *Summers*,

"the language … appeared in a particular context and did particular work." *Id.* "What matters in [*Summers*] is not a one-line description, but a pages-long analysis" surrounding it. *Borden v. United States*, 141 S. Ct. 1817, 1833 n.9 (2021) (plurality). In the relevant analysis, *Summers* was faulting the associations for not proving that a specific member was injured; it used "name" as a synonym for "identify." *See* 555 U.S. at 498-99. And members can of course be identified without using their legal names. *See, e.g.*, *Advocs. for Highway*, 41 F.4th at 594; *New York v. U.S. Dep't of Com. (Census Case)*, 351 F. Supp. 3d 502, 606 n.48 (S.D.N.Y.), *aff'd in part, rev'd in part and remanded sub nom*, 139 S. Ct. 2551 (2019); *Humane Soc'y*, 2021 WL 1593243, at *5; *FAIR*, 291 F. Supp. 2d at 289. "Neither Congress nor the Supreme Court hides elephants in mouseholes." *Atkins v. Crowell*, 945 F.3d 476, 479 (6th Cir. 2019) (cleaned up). It would be extraordinary to understand the Supreme Court to transform associational standing with a single word in a single sentence.

*Summers* could not be precedent on the use of pseudonyms (or anonymity) because the associations in *Summers* did not use them. Though *Summers* discusses a "naming requirement," pseudonyms are names. *See Name*, Black's Law Dictionary (11th ed. 2019) ("word or phrase identifying … a person … and distinguishing that person … from others"); *Pseudonym*, Black's Law Dictionary ("A fictitious name or identity"). And the Court's reasoning would have been radically different if the associations had submitted an affidavit saying that "Member A" had concrete plans to visit a specific area of the forest that a covered project would soon affect. *See Summers*, 555 U.S. at 495-96. Again, it would be "contrary to all traditions of our jurisprudence to consider the law on this point conclusively resolved by broad language in cases where the issue was not presented or even envisioned." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385-86 n.5 (1992); *accord Armour & Co. v. Wantock*, 323 U.S. 126, 132-33 (1944) ("[W]ords of our opinions are to be read in the light of the facts of the case under discussion…. General expressions transposed to other facts are often misleading."); *Brown v. Davenport*, 142 S. Ct. 1510, 1528 (2022) ("We neither expect nor hope that our successors will comb these pages

for stray comments and stretch them beyond their context" to arguments that the decision "had no reason to pass on.").

No matter what *Summers* requires, that case was an appeal from a *final judgment*. 555 U.S. at 500. Its reasoning does not apply at the pleading stage. *See Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) (rejecting "the proposition that an association must 'name names' in a complaint"); *Disability Rts.*, 522 F.3d at 802 ("[T]he member on whose behalf the suit is filed [can] remain unnamed."); *Am. Coll. Of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 F. App'x 235, 241 n.8 (11th Cir. 2020) ("[R]equiring specific names at the motion to dismiss stage is inappropriate."); *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999) (denying that an association must "name the members on whose behalf suit is brought"); *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (same). The Fifth Circuit accurately summarized the state of the law three years after *Summers*: In 2012, it was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint." *Hancock Cnty.*, 487 F. App'x at 198.

## 2. Courts routinely reject the argument that *Summers* regulates the use of pseudonyms.

When associations use pseudonyms, most litigants understand that *Summers* has nothing to say about it. But some have tried to argue that *Summers* bans this practice. When they do, courts almost always reject the argument. For example, the D.C. Circuit recently held that "anonymity is no barrier to standing," as long as an association identifies "specific" members. *Advocs. for Highway*, 41 F.4th at 593-94. The association in that case identified "specific, individual" members who were harmed by the challenged rule, but it did not reveal "the names of the individuals." *Id.* Nevertheless, the D.C. Circuit found associational standing. *Id.* at 592. *Summers* did not apply because the association "did not offer only unsubstantiated generalizations about … its membership," it also "identif[ied] specific members" with standing. *Id.* at 593-94. The association did not divulge the "names" of its members,

but the D.C. Circuit held that "'[n]aming … members adds no essential information bearing on'" standing. *Id.* at 594.

Similar examples abound. In the litigation over the repeal of DACA, for instance, the NAACP sued on behalf of its anonymous members: DACA beneficiaries whose legal names were withheld from the government. *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C. 2018). Though the government complained about the NAACP's use of pseudonyms, the district court rejected that "'tenuous'" reading of *Summers. Id.* It ruled that the NAACP had associational standing under the more searching standards of the summary-judgment stage, *id.* at 225-26 & n.10, and the Supreme Court affirmed without questioning standing, *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020).

### 3. No circuit has held that an association lacks standing because it referred to its members with pseudonyms.

The District cites other cases that it claims forbid the use of pseudonyms, MTD 8, but almost none of them involved an association that used pseudonyms. Those cases applied *Summers*'s actual holding: They found no standing because the associations identified no specific member with standing. For example, in *Tenn. Republican Party v. SEC*, 863 F.3d 507 (6th Cir. 2017), the associations "fail[ed] to identify any members," except four people who weren't injured. *Id.* at 521. No specific members with standing were identified with pseudonyms or anonymously. *See* Pet'rs App'x (CA6 Doc. 39) at 312-13, No. 16-3360 (6th Cir. Nov. 16, 2016). Similarly, in *Waskul v. Washtenaw Cty. Community Mental Health*, 900 F.3d 250 (6th Cir. 2018), the associations put forth "three named members," but the court concluded that none of those members were injured. *Id.* at 256-57 (cleaned up); *see also Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (anonymous members or pseudonyms not at issue); *Penn. Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 321 (S.D.N.Y. 2020) (same); *Equal Vote Am. Corp. v. Pelosi*, 397 F. Supp. 3d 503, 509 (S.D.N.Y. 2019) (same); *Residents & Fams. United to Save Our Adult Homes v. Zucker*, 2018 WL 1175152, at *5 (E.D.N.Y. Mar. 6, 2018) (same).

The District also relies on *Do No Harm v. Pfizer*, 2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022), *appeal pending*, No. 23-15 (2d Cir.). This Court should not. The decision is currently on appeal and will likely be reversed. It ignores the Second Circuit's binding precedent on this point. *See Bldg. & Const.*, 448 F.3d at 144-45. It openly conflicts with two decisions from its own court and several decisions from other courts. *See Do No Harm*, 2022 WL 17740157, at *9 n.5, *8 & n.3. And it does not grapple with any of the arguments above, likely because it *sua sponte* dismissed without giving the plaintiff notice or an opportunity to respond. *See* Appellant's Br., 2023 WL 2536426 (2d Cir. Mar. 10, 2023). That *sua sponte* dismissal decreases the "reliability of the order" and will be "'by itself, grounds for reversal.'" *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999).[1]

### B. Pseudonymity is regulated by other rules, not Article III.

That *Summers* does not address pseudonyms is unsurprising because pseudonymity has nothing to do with Article III. Pseudonymity is constrained by the rules governing case captions, discovery, and the public's right to access court documents. But PDE has violated none of those rules, and the District in its motion to dismiss does not argue otherwise.

Anonymity "in no way detracts" from the "components of what constitutes an Article III case or controversy." *B.R. v. F.C.S.B.*, 17 F.4th 485, 494 (4th Cir. 2021). If no case or controversy existed unless everyone used their real names, then plaintiffs should not be able to sue under pseudonyms either—yet that practice is "common." *Id.* at 495 (citing, as famous examples, *Roe v. Wade* and *Doe v. Bolton*). The Federal Rules, moreover, *require* litigants to anonymize the names of minors. Fed. R. Civ. P. 5.2(a); *see also* Fed. R. Civ. P. 17(d) (no need to refer to public officers "by name"). Yet minors and

---

[1] PDE is aware of one additional unpublished decision that supports the District. *See Speech First, Inc. v. Shrum*, 2023 WL 2905577 (W.D. Okla. Apr. 10, 2023), *appeal pending* No. 23-6054 (10th Cir.). That decision is on appeal to the Tenth Circuit and is also likely to be reversed for the reasons explained by Speech First and its numerous and diverse amici, including the American Civil Liberties Union, the U.S. Chamber of Commerce, and more. *See id.*

their parents can sue (and have associations sue for them) without using their legal names. *E.g.*, *P.M. v. Evans-Brant Cent. Sch. Dist.*, 2008 WL 4379490, at *2-4 (W.D.N.Y. Sept. 22, 2008); *Douglas Cnty. Sch. Dist. RE-1 v. Douglas Cnty. Dep't of Pub. Health*, 2021 WL 5106284, at *1 (D. Colo. Oct. 21, 2021); *Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016) (Marbley, J.) (granting pseudonymity to both parent and student child). All these practices are allowed because "the use, vel non, of pseudonyms in pleading is immaterial to the case or controversy inquiry." *B.R.*, 17 F.4th at 495.

"[T]o hold that Article III requires an organization" to use its members' legal names "would be in tension with one of the fundamental purposes of the associational standing doctrine—namely, protecting individuals who might prefer to remain anonymous." *Census Case*, 351 F. Supp. 3d at 606 n.48. Far from making individual members the stars of the show, a premise of associational standing is that the litigation will not "requir[e] the participation of individual members." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The doctrine recognizes the advantages of letting members "band together" and litigate "'under a name and form'" that is "'collective'" in nature. *UAW v. Brock*, 477 U.S. 274, 290 (1986). PDE's members' legal names also are protected by the First Amendment associational privilege. *See AFPF v. Bonta*, 141 S. Ct. 2373, 2382 (2021); *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459-63 (1959).

If the District were right that associations lack standing unless they unmask members in the complaint, then associations should have lacked standing to represent anonymous immigrants, *NAACP*, 298 F. Supp. 3d at 225 & n.10; people with sensitive medical conditions, *Disability Rts. N.J., Inc. v. Velez*, 2011 WL 2976849, at *11 & n.10, *14 (D.N.J. July 20, 2011); sexual minorities, *Log Cabin Republicans v. United States*, 716 F. Supp. 2d 884, 890, 892 (C.D. Cal. 2010), *vacated due to subsequent mootness*, 658 F.3d 1162 (9th Cir. 2011); regulated entities suing their regulator, *FAIR*, 291 F. Supp. 2d at 287; or students, *Student Members of Same v. Rumsfeld*, 321 F. Supp. 2d 388, 395-96 (D. Conn. 2004);

*Schlissel*, 939 F.3d at 766. The District's proposed rule would render associational standing a dead letter for vulnerable members.

*      *      *

The Supreme Court's recent decision in *Students for Fair Admissions, Inc. (SFFA) v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141 (2023), confirms how far off-base the District is. The association in those consolidated cases, according to the Court, had Article III standing "when it filed suit." *Id.* at 2158; *accord SFFA v. UNC*, 2018 WL 4688388, at *6 (M.D.N.C. Sept. 29, 2018) (denying 12(b)(1) motion); *SFFA v. Harvard*, 261 F. Supp. 3d 99, 111 (D. Mass. 2017) (same). But when that association filed suit, its complaints referred to its members only with pseudonyms. *See* Compl. (Doc. 1) ¶15, No. 1:14-cv-14176 (D. Mass. Nov. 17, 2014) ("Applicant"); Compl. (Doc. 1) ¶13, No. 1:14-cv-954 (M.D.N.C. Nov. 17, 2014) ("Applicant"). Under the District's view, though, every litigant and court missed this jurisdictional defect with SFFA's complaints. So those landmark cases should have been dismissed at the outset. Perhaps all those lawyers and all those courts missed this issue for all those years. More likely, the District is just wrong.

## II.    The District's remaining standing arguments fail.

The District's remaining arguments primarily duplicate its prior arguments opposing PDE's motion for a preliminary injunction. These arguments fail, as PDE previously explained.

An association has standing when (1) "its members would otherwise have standing to sue in their own right," (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) "neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. The District challenges only the first requirement. MTD 9-15.[2] To show that its members have standing, PDE must plausibly allege an "injury in fact"

---

[2] PDE meets the other *Hunt* requirements: The claims here are in the heartland of PDE's mission, *e.g.*, Compl. ¶14, and the suit does not require participation of individual members because

that is "fairly traceable" to the District's conduct and would "'likely'" be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61. In its motion to dismiss, the District contests only injury in fact.

### A.    The Students have plausibly alleged an injury in fact.

To show an injury in fact, PDE must plausibly allege that (1) the students[3] at issue "intend to engage in expression that the Free Speech Clause arguably protects," (2) their expression is "arguably proscribed" by the Policies, and (3) they face a "credible threat of enforcement." *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). This standard is "'quite forgiving.'" *See Wollschlaeger v. Governor*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc). Indeed, it is "not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020).

PDE satisfies all three requirements. The speech at issue is more than "arguably affected" by a constitutional interest, *Susan B. Anthony*, 573 U.S. at 161, because it reflects core moral, political, and philosophical beliefs, *see Meriwether v. Hartop*, 992 F.3d 492, 508 (6th Cir. 2021) ("Pronouns can and do convey a powerful message implicating a sensitive topic of public concern."). These students' desired speech is more than "arguably proscribed" by the Policies. *Susan B. Anthony*, 573 U.S. at 163; *see* PI-Opp. 3 (conceding that "purposeful references contrary to another student's identity would violate District policies"); MTD 6 (same). And there is a "substantial" threat of the District enforcing the Policies, *Susan B. Anthony*, 573 U.S. at 164, because the Policies "explicitly prohibi[t]" the speech the students want to express, *Parsons v. U.S. DOJ*, 801 F.3d 701, 711 (6th Cir. 2015); *see also, e.g.*, *Alexis*

---

PDE seeks only declaratory and injunctive relief, *see, e.g.*, *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004).

[3] The children of Parents A, B, and D are also PDE members in their own right, just like their parents. *E.g.*, Compl. ¶¶15, 68.

*Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) ("[W]hen a course of action is within the plain text of a statute, a 'credible threat of prosecution' exists."). In short, PDE "has standing because [its] claim is that the non-moribund policy causes self-censorship among those who are subject to it, and [its] speech is arguably regulated by the policy." *Ostrewich v. Tatum*, --- F.4th ----, 2023 WL 4231608, at *5 (5th Cir. June 28, 2023) (cleaned up); *accord Fenves*, 979 F.3d at 335.

The District makes several attempts to minimize the Students' injuries, but all fail.

***First***, the District argues that the Students suffer no injury because their "self-censor[ship]" is grounded in "baseless speculation they will be subject to discipline for referring to other students by pronouns with which they do not identify." MTD 12. That is baffling. The District has repeatedly confirmed that the Policies prohibit students from referring to others based on biological sex instead of gender identity. *See* MTD 6 ("purposeful references contrary to another student's identity would violate District policies"); Ex. S at 2; PI-Opp. 3; Compl. ¶57; *Parsons*, 801 F.3d at 711. Moreover, the Policies themselves emphasize that violations "are strictly prohibited and will not be tolerated." Ex. D at 16; *e.g.*, Ex. A at 1 (promising to "vigorously enforce" Policies); MTD 4 (emphasizing that the Policies will be "vigorously enforce[d]"). They were "recently enacted" or "revised," and there is no "compelling contrary evidence" that they will not be enforced. *Fenves*, 979 F.3d at 335 (cleaned up); *Harrell v. Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010). The District is also "vigorously litigat[ing]" their constitutionality. *Online Merchants Guild v. Cameron*, 995 F.3d 540, 551 (6th Cir. 2021). To top it off, the District has repeatedly refused to provide assurances that it will not punish students who refer to classmates according to their biological sex or express their sincerely held beliefs about sex and gender. *E.g.*, Compl. ¶¶57, 103; *see also Fischer*, 52 F.4th at 309 ("[S]uch refusals, in combination with the other factors, weigh in favor of finding a credible threat of prosecution."). Indeed, the District has "warned" parents and students that their children's desired speech would violate the Policies and be met with consequences. *Cf. Online Merchants*, 995 F.3d at 550 ("warning letters" sent to regulated parties

13

"regarding their specific conduct" favored standing); Compl. ¶57 (warning that purposeful misgendering violates the Policies).

The District vaguely asserts that "students will <u>not</u> be disciplined for expressing their religious views," MTD 6, but these assertions are meaningless because the District continues to "confirm that … purposeful references contrary to another student's identity would violate District policies." MTD 6. Moreover, the speech at issue is also based on opinions about sex and gender unrelated to "religious views." *E.g.*, Dkt. 7-6, ¶21 (Parent D's views are "based on science"). Nor do the students want "accommodations to avoid using pronouns." Ex. S at 2. They want to express their deeply held views as guaranteed by the First Amendment. An "accommodation" that purports to "allow" a student to speak in a manner the District still finds acceptable—instead of allowing the student to simply express his or her beliefs—is simply compelled speech by another name. It still "alters the content of the [student's] speech." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988); *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2318 (2023) ("No government … may affect a speaker's message by forcing her to accommodate other views; no government may alter the expressive content of her message; and no government may interfere with her desired message." (cleaned up)); *FEC v. Cruz*, 142 S. Ct. 1638, 1648 (2022) (concluding that "[d]emanding that [the plaintiff] comply with the Government's 'alternative' would therefore require it to forgo the exercise of a First Amendment right [the court] must assume [the plaintiff] has" and thus did not undermine standing). Moreover, the District never specifies what its purported "accommodations" would look like or why it thinks they would be appropriate.

Furthermore, violations of the District's speech code are easy to commit and easy to report. *See Fischer*, 52 F.4th at 308 (finding significant that the challenged scheme "contains a feature making enforcement 'easier or more likely'—namely, a provision authorizing any member of the public to file complaints"). Anyone can submit an anonymous report to the District's "Stay Safe Speak Up

Helpline" through an online submission or by phone. Compl. ¶60. Several appellate courts, including the Sixth Circuit, have held that similar bias-reporting systems objectively chill speech in the university context. *See, e.g.*, *Schlissel*, 939 F.3d at 764. The chilling effect is even greater in the K-12 context because adolescents are less mature and more susceptible to pressure from authority figures. *See Lee v. Weisman*, 505 U.S. 577, 592 (1992) ("[T]here are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."); *Cartwright*, 32 F.4th at 1123 ("[T]he students targeted here are ... teenagers … who, it stands to reason, are more likely to be cowed by subtle coercion.").

Taking these facts together, it is unclear what more the District thinks a pre-enforcement plaintiff should provide, besides allegations that he or she has already been punished. But it's well-established that no such evidence is needed. This is a *pre*-enforcement challenge, so "[p]laintiffs may have standing even if they have never been prosecuted or threatened with prosecution." *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012); *cf. Schlissel*, 939 F.3d at 764-65 ("The lack of discipline against students could just as well indicate that speech has already been chilled."). What matters is whether there is a "*credible threat* of enforcement." *Susan B. Anthony*, 573 U.S. at 161 (emphasis added). That is the case here.

**Second**, the District claims that PDE lacks standing because the "students have silenced *themselves*." MTD 12 (emphasis original). But it is "'well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.'" *McGlone*, 681 F.3d at 729; *see also, e.g.*, *Deja Vu of Nashville, Inc. v. Metro. Gov't*, 274 F.3d 377, 399 (6th Cir. 2001) ("A mere threat to First Amendment interests is a legally cognizable injury."). Because PDE has shown an "objective chill," it has also shown a "'present injury in fact.'" *McGlone*, 681 F.3d at 729.

**Third**, the District argues that PDE has no standing because the Policies apply only if the students "engage in the harassment of trans and nonbinary students as defined in the polic[ies]." MTD

12. But as explained, there is no question that the speech at issue will violate the Policies. PI-Br. 10-19. Here, Parents A-D and their children believe that biological sex is inherent and immutable. *E.g.*, Compl. ¶¶71-73, 91-93, 112-14, 129-31. They "bear no ill will" toward other students, but they do not want to be forced to "affirm" that a biologically male student is actually a female—or vice versa—or that another student is neither male nor female because doing so would contradict their deeply held beliefs. *E.g.*, Compl. ¶¶71-73, 91-93, 112-14, 129-31; Parent A Decl. ¶8; Parent B Decl. ¶8; Parent C Decl. ¶7; Parent D Decl. ¶8. Yet that is exactly what the Policies require. According to the District, any student who "purposefully refer[s] to another student by using gendered language they know is contrary to the other student's identity" would violate the District's policies. Compl. ¶57; Ex. S at 2. The Code of Conduct—which is hardly mentioned by the District—bars all "discriminatory language," which is defined as "verbal or written comments" that are "derogatory towards an individual or group" based on, among other things, "transgender identity." Ex. D at 9. At a minimum, the desired speech is "'*arguably*'" protected by the First Amendment and "'*arguably* proscribed'" by the Policies, which is all that is required to show standing. *Fischer*, 52 F.4th at 307 (emphases added); *accord Fenves*, 979 F.3d at 332 n.10.

**Finally**, none of the District's assortment of cases undermines PDE's standing. MTD 11-12. *Morrison v. Bd. of Edu.*, 521 F.3d 602 (6th Cir. 2008), is "distinguishable" because PDE "brings a facial challenge" to the Policies. *Schlissel*, 939 F.3d at 766. "In *Morrison*, a student brought a lawsuit seeking nominal damages because his high school's policy 'prohibiting students from making stigmatizing or insulting comments regarding another student's sexual orientation' chilled his speech. Unlike [PDE], Morrison didn't dispute the constitutionality of the school rule as written." *Id.* Instead, "[h]e challenged the rule only as applied to him." *Id.* And because "the rule had never been applied to him," the defendants had never "threatened to apply it to him," and the defendants were objectively "[un]likely

to apply [the rule] to him in the future." *Id.* And because it no longer existed, Morrison lacked standing to bring his as-applied claim. *Id.* None of those factors are present here.

In *Glass v. Paxton*, 900 F.3d 233 (5th Cir. 2018), the court held that three professors lacked standing for a First Amendment challenge to a "Texas law permitting the concealed carry of handguns on campus" because the law did not prohibit speech and the professors were not the object of the regulation. *Id.* at 236, 238-40. Rather, the plaintiffs' alleged injury stemmed from a "'chain of contingencies,'" including the conduct of third parties. *Id.* at 239. But here, the Students are the direct object of the litigation, the Policies directly regulate speech, and there is no "'chain of contingencies'" causing the self-censoring. And in *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541 (4th Cir. 2010), the Fourth Circuit held that the plaintiffs lacked standing because "they were unable … to name any form of expressive activity that [the plaintiffs] wish to engage in, but refrain from in fear of violating" the policy. *Id.* at 548-49. Here, the District's Policies prohibit the exact speech that the Students wish to express. *See, e.g.*, MTD 6; PI-Opp. 3; Compl. ¶57; *see also Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 165-66 (4th Cir. 2023) (concluding that a similar high school's "Share, Speak Up, Speak Out: Bias Reporting Form … caused the parents' children to experience a non-speculative and objectively reasonable chilling effect on their speech").

### B.     The Parents have plausibly alleged an injury in fact for the Fourteenth Amendment claim.

Although the District failed to argue that the Parents lacked standing to bring the Fourteenth Amendment parental-rights claim in its opposition to PDE's preliminary-injunction motion, the District briefly does now. MTD 13-15. But there was a good reason the District did not raise the challenge before: Standing is easily satisfied here.

The District brought its motion under Rule 12(b)(1), not Rule 12(b)(6). MTD 1. "For purposes of [the] standing analysis," the Court must "assume that [PDE] will be able to prove [the Policies] violat[e] the parents' [Fourteenth Amendment] rights." *Kanuszewski v. Michigan Dep't of Health & Hum.*

*Servs.*, 927 F.3d 396, 411 (6th Cir. 2019); *see also Cruz*, 142 S. Ct. at 1647-48 ("For standing purposes, we accept as valid the merits of appellees' legal claims, so we must assume that the [restriction] … unconstitutionally burdens speech."). Moreover, "it represents a harm to parents when the state denies them their right to direct the education and religious upbringing of their children." *Kanuszewski*, 927 F.3d at 411. That is precisely what PDE alleged. *E.g.*, Compl. ¶¶88, 110, 126, 148. The parents' children are self-censoring outside school, including when there's no connection to school activities, thereby impinging on "the zone of [the] parental," *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2046 (2021). Moreover, Parents A-D have experienced (and continue to experience) other cognizable injuries. For example, they experience "constant anxiety that [their] children will be subjected to" punishment, "caus[ing] [the parents] emotional and psychological harm." Compl. ¶¶88, 110, 126, 148. The parents have also "watched [their] children steadily lose self-esteem and self-confidence." Compl. ¶¶87, 109, 125. And it has caused the parents a crisis of conscience. Compl. ¶¶88, 110, 126, 148. These other injuries are also enough for standing.

The District argues that there's no risk the parents will be injured because "the District offers … opportunities" to "be educated in an environment that allows discussion on gender identity" and because the "students have been given the opportunity to express these views through writing assignments and pronoun surveys." MTD 14-15. But the complaint alleges that the District's Policies force students to choose *between* stating their beliefs and being punished or betraying their conscience by stating a view they do not believe. The parents must navigate their children through this forced choice of following their beliefs or betraying them on an important topic of national significance. *Cf. 303 Creative*, 143 S. Ct. at 2321 ("[T]he opportunity to think for ourselves and to express those thoughts freely is among our most cherished liberties and part of what keeps our Republic strong."). That impinges on a parents' right to direct the upbringing of their children.

18

The District also claims that no policy "tells the parents and students that they cannot discuss the fluidity or immutability of gender in their homes," "tells the parents and students that they will be disciplined for discussing their religious views on gender," or "tells parents they must educate their children to believe that gender is fluid." MTD 15. But the District ignores the full breadth of the policies and the speech for which the Students wish to speak. The Students "want to discuss [gender-identity] topics *with other students and the Olentangy community*" both "on and off campus, including during off-campus activities with no connection to any school-related activity." *E.g.*, Compl. ¶97 (emphasis added). At issue is thus not merely speech between the parent and student. If the parents teach their children how they wish and their children do not self-censor, then there is a credible risk of the school punishing their children under the challenged policies, harming them is a host of ways. *E.g.*, Compl. ¶¶97-98, 106-10.

## CONCLUSION

The Court should deny the District's motion to dismiss.

Date: July 18, 2023

Respectfully submitted,

*s/ J. Michael Connolly*

J. Michael Connolly (admitted *pro hac vice*)
Taylor A.R. Meehan (admitted *pro hac vice*)
James F. Hasson (admitted *pro hac vice*)
Thomas S. Vaseliou (admitted *pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
taylor@consovoymccarthy.com
james@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

Emmett E. Robinson (OH Bar No. 88537)
Trial Attorney
ROBINSON LAW FIRM LLC
6600 Lorain Ave. #731
Cleveland, OH 44102
Telephone: (216) 505-6900
Facsimile: (216) 649-0508
erobinson@robinsonlegal.org

## CERTIFICATE OF SERVICE

I certify that on July 18, 2023, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

*s/ J. Michael Connolly*